# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-2818

RICHARD R. DOUCETTE, APPELLANT,

v.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 2, 2016                                    Decided March 6, 2017)

*Shawn D. Murray*, of Providence, Rhode Island, was on the brief for the appellant. *Zachary M. Stolz*, of Providence, Rhode Island, argued before the Court.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Robert Schneider*, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. SCHOELEN, *Judge*, filed a dissenting opinion.

LANCE, *Judge*: The appellant, Richard R. Doucette, appeals, through counsel, a June 1, 2015, Board of Veterans' Appeals (Board) decision that, in part, denied entitlement to an initial compensable rating for his service-connected bilateral hearing loss.[1] Record (R.) at 1-19. On July 18, 2016, this case was submitted to a panel for decision, and on August 3, 2016, the Court ordered the parties to file supplemental memoranda of law. The parties filed their supplemental

---

[1] The Court lacks jurisdiction over the claims for entitlement to an increased disability rating for his service-connected chronic low back strain, currently rated as 40% disabling, and to a total disability rating based on individual unemployability that were remanded and they will not be addressed further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000).

memoranda on September 2, 2016. Oral argument was held on November 2, 2016.[2] For the reasons that follow, the Court will affirm the Board's June 1, 2015, decision.

## I. FACTS

The appellant served on active duty in the U.S. Marine Corps from November 1972 to August 1975. R. at 37. Shortly after his separation from service, he submitted a claim for entitlement to service connection for hearing loss in his right ear. R. at 1360-63. A February 1976 rating decision denied his claim. R. at 1338.

In March 2004, the appellant submitted a claim for entitlement to service connection for bilateral hearing loss, R. at 1156-57, and underwent a VA audiological examination in June 2004, R. at 1138-39. A July 2004 rating decision denied his claim, as he had not submitted new and material evidence sufficient to reopen his previously denied hearing loss claim. R. at 1127-32. He submitted a timely Notice of Disagreement (NOD), R. at 1121-23, VA issued a Statement of the Case (SOC), R. at 1086-1100, and he perfected his appeal, R. at 1084-85.

The appellant presented testimony at an October 2006 Board hearing. R. at 949-70. In a January 2007 decision, the Board determined that he had submitted new and material evidence to reopen his previously denied claim and remanded the claim for additional development. R. at 894-910. The appellant underwent VA audiological examinations in October 2007, R. at 878-82, December 2008, R. at 806-07, and July 2009, R. at 727-28.

An August 2009 rating decision granted service connection for bilateral hearing loss, rated as noncompensable, effective March 25, 2004. R. at 715-26. The appellant filed a timely NOD. R. at 669-70. He underwent another VA audiological examination in February 2013. R. at 640-49. VA issued an SOC in April 2013, R. at 600-17, and he perfected his appeal the following month, R. at 576-77. The appellant presented testimony at a Board hearing in November 2013. R. at 1401-13.

In the June 2015 decision on appeal, the Board denied entitlement to an initial compensable rating for service-connected bilateral hearing loss. R. at 1-19. In doing so, the Board found that a

---

[2] Oral argument was held at the Emory University School of Law in Atlanta, Georgia. The Court extends its appreciation to the law school for its hospitality.

referral for extraschedular rating was not warranted, as the appellant's symptoms and their resultant effects are adequately contemplated by the rating criteria. R. at 12.

## II. THE PARTIES' ARGUMENTS

The appellant does not challenge the Board's determination as to the proper schedular disability rating. *See Cromer v. Nicholson*, 19 Vet.App. 215, 217 (2005) ("[I]ssues not raised on appeal are considered abandoned."), *aff'd*, 445 F.3d 1346 (Fed. Cir. 2006). Rather, he argues that the Board misapplied 38 C.F.R. § 3.321(b)(1) and failed to provide an adequate statement of reasons or bases for its determination that he was not entitled to referral for extraschedular consideration. Appellant's Brief (Br.) at 5-13; Reply Br. at 1-8. He specifically contends that the Board failed to explain how his hearing loss disability was properly contemplated by the rating schedule and to adequately "discuss extraschedular consideration in terms of the effects of [his] hearing loss on his functional capacity." Appellant's Br. at 10.

The Secretary responds that the Board did not clearly err when it found that the appellant was not entitled to referral for extraschedular consideration and that it provided an adequate statement of reasons or bases to support its decision. Secretary's Br. at 8-27. In particular, he asserts that the appellant fails to cite any evidence that his service-connected bilateral hearing loss presents such an exceptional disability picture that evaluation under the rating schedule is inadequate. *Id.*

## III. ANALYSIS

This case hinges on two issues: first, whether the schedular rating criteria for hearing loss contemplate specific functional effects of hearing impairment; and second, the interplay between schedular and extraschedular evaluations for hearing loss.

### A. Schedular Evaluations for Hearing Loss

The rating criteria for hearing loss, unlike a majority of the conditions in VA's rating schedule, do not list any specific symptoms or functional effects. *See* 38 C.F.R. §§ 4.85 (2016), 4.86 (2016). Instead, VA evaluates service-connected hearing loss through the mechanical application of a veteran's audiometric testing results to a rating table. *See Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992). Specifically, VA conducts two audiometric tests for compensation purposes: a puretone audiometry test, which measures puretone decibel thresholds at 1000, 2000, 3000, and

4000 Hertz, and a controlled speech discrimination test, the Maryland CNC. 38 C.F.R. § 4.85(a), (d). Based on the results of these tests, each ear is assigned an evaluation corresponding to the level of hearing impairment using either Table VI, which requires results from both tests, or, in certain circumstances, Table VIa, which requires only the puretone threshold results. 38 C.F.R. §§ 4.85(b), (c), (h), 4.86. The evaluations for each ear are combined using Table VII to determine the appropriate disability rating. 38 C.F.R. § 4.85(e), (h).

VA first proposed the current rating criteria for hearing loss in May 1987. *See* 52 Fed. Reg. 17,607 (May 11, 1987). VA explained that the "new schedule provides for evaluating hearing loss based on a combination of puretone averages and speech discrimination," measuring a veteran's ability to hear sound at specific frequencies and volumes and to identify spoken words, respectively. 52 Fed. Reg. at 17,607. These tests would "provide[] for a more accurate representation of actual hearing impairment by recognizing that individuals with slight to moderate decibel loss as determined by puretone averaging may have significant impairment in speech discrimination and vice versa." 52 Fed. Reg. at 17,607. VA adopted the revised schedule on November 18, 1987, effective December 18, 1987. 52 Fed. Reg. 44,117, 44,117 (Nov. 18, 1987).

In April 1994, VA proposed two amendments to § 4.85 to recognize exceptional patterns of hearing impairment that were not fully contemplated by the existing criteria. *See* 59 Fed. Reg. 17,295 (Apr. 12, 1994). The first proposed amendment contemplated a pattern of hearing loss where "speech discrimination tests in a controlled setting are often near normal, [but] they do not reflect the true extent of difficulty understanding speech in the everyday work environment, even with the use of hearing aids." *Id.* at 17,296. The second proposed amendment contemplated a pattern of hearing loss constituting "an extreme handicap in the presence of any environmental noise, [which] often cannot be overcome by the use of hearing aids." *Id.* VA explained that "[t]he intended effect of these two new provisions is to fairly and accurately assess the hearing disabilities of veterans as reflected in a real life industrial setting." *Id.* VA adopted the proposed amendments on May 11, 1999, effective June 10, 1999. 64 Fed. Reg. 25,202 (May 11, 1999).

In sum, when evaluating hearing loss, VA measures a veteran's ability to hear certain frequencies at specific volumes and to understand speech, using rating tables to correlate the results of audiometric testing with varying degrees of disability. In light of the plain language of §§ 4.85 and 4.86, as well as the regulatory history of those sections, the Court holds that the rating criteria

4

for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment, as these are precisely the effects that VA's audiometric tests are designed to measure. Thus, when a claimant's hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria.[3] However, as the rating criteria do not otherwise discuss, let alone account for, other functional effects, such as dizziness, vertigo, ear pain, etc., the Court cannot conclude that the rating schedule, on its face, contemplates effects other than difficulty hearing or understanding speech.

### B. Extraschedular Referral

#### 1. General Background

As this Court has held on multiple occasions, the Board generally must consider referral for extraschedular consideration only "'[w]here there is evidence in the record that shows exceptional or unusual circumstances or where the veteran has asserted that a schedular rating is inadequate.'" *Yancy v. McDonald*, 27 Vet.App. 484, 493 (2016) (quoting *Colayong v. West*, 12 Vet.App. 524, 536 (1999); *see also Thun v. Peake*, 22 Vet.App. 111, 115 (2008) ("When either a claimant or the evidence of record suggests that a schedular rating may be inadequate, the Board must specifically adjudicate the issue of whether referral for an extraschedular rating is warranted."), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009). In other words, although "[e]xtraschedular rating consideration is a component of [an] appellant's claim for an increased rating," *Brambley v. Principi*, 17 Vet.App. 20, 23 (2003), the Board is not obligated to analyze whether referral is warranted if "§ 3.321(b)(1) [is] neither specifically sought by [the claimant] nor reasonably raised by the facts found by the Board," *Dingess v. Nicholson*, 19 Vet.App. 473, 499 (2006), *aff'd*, 226 Fed.Appx. 1004 (Fed. Cir. 2007); *see also Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (holding that the Board is required to consider all issues raised by a claimant or reasonably raised by the evidence of record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Thus, although the parties

---

[3] To the extent that the appellant may disagree with how degrees of hearing impairment correspond with various disability ratings, the Secretary's policy decisions regarding how to measure and compensate hearing loss disabilities and to not compensate hearing loss until it reaches a specific level are decisions beyond the Court's authority to review. *See* 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities . . . or any action of the Secretary in adopting or revising that schedule."); *see also Wingard v. McDonald*, 779 F.3d 1354, 1356-57 (Fed. Cir. 2015) (discussing this Court's inability to review the schedule of ratings for disabilities); *Copeland v. McDonald*, 27 Vet.App. 333, 338 (2015); *Prokarym v. McDonald*, 27 Vet. App. 307, 311-12 (2015).

agreed at oral argument that an extraschedular analysis was required in all cases before the Board, *see* Oral Argument at 11:11-23, 26:03-27:10, 55:36-45, this Court has squarely rejected that contention. *See Yancy*, 27 Vet.App. at 493-94; *Smallwood v. Brown*, 10 Vet.App. 93, 98 (1997).

Once the claimant or the record raises the issue of whether extraschedular referral is warranted, the Board must determine whether the case presents an exceptional or unusual disability picture with such related factors as frequent periods of hospitalization or marked interference with employment. 38 C.F.R. § 3.321(b)(2016). "The determination of whether a claimant is entitled to an extraschedular rating . . . is a three-step inquiry." *Thun*, 22 Vet.App. at 115 (clarifying that, although the Court in *Thun* identified three "steps," they are, in fact, necessary "elements" of an extraschedular rating). The first step in the inquiry is to determine whether "the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Id.*; *see Sowers v. McDonald*, 27 Vet.App.472, 478 (2016) ("The rating schedule must be deemed inadequate before extraschedular consideration is warranted."). "Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Thun*, 22 Vet.App. at 115. If the adjudicator determines that the available schedular ratings are inadequate, the second step of the inquiry requires the adjudicator to "determine whether the claimant's exceptional disability picture exhibits other related factors," such as marked interference with employment or frequent periods of hospitalization. *Id.* at 116. Then, if the first two steps have been satisfied, the adjudicator must refer the claim to the Under Secretary for Benefits or the Director of the Compensation Service for a determination of whether an extraschedular rating is warranted. *Id.*

"[T]he first *Thun* element compares a claimant's symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms." *Yancy*, 27 Vet.App. at 494. Although the first and second *Thun* elements are interrelated, they "involve separate and distinct analyses," and "[i]f either element is not met, then referral for extraschedular consideration is not appropriate." *Id.*

### 2. Extraschedular Referral for Hearing Loss

Nothing in the rating criteria for hearing loss changes these general requirements for when referral for extraschedular consideration is warranted, and the Board is only obligated to discuss

extraschedular referral for hearing loss when there is evidence in the record which reveals that the appellant's hearing loss presents exceptional or unusual circumstances or where the appellant has asserted that a schedular rating is inadequate. *See Yancy*, 27 Vet.App. at 493; *Thun*, 22 Vet.App. at 115; *Dingess*, 19 Vet.App. at 499; *Smallwood*, 10 Vet.App. at 98.

To the extent that the appellant asserts that *Martinak v. Nicholson*, 21 Vet.App. 447 (2007), requires the Board to address a claimant's functional impairment resulting from hearing loss, Appellant's Br. at 9-11, his argument is misplaced. *Martinak* imposes neither a general requirement on the Board to engage in an extraschedular analysis nor specific requirements on the Board once it decides that an extraschedular discussion is warranted. Rather, *Martinak* held that the applicable regulatory provisions require *VA examiners* to elicit information from a claimant concerning the functional effects of his or her disability. 21 Vet.App. at 455. Although the Court noted that a VA audiologist's description of the functional effects of a claimant's hearing loss can aid the Board in making an extraschedular determination, nowhere did it hold that the Board has a duty to engage in an extraschedular analysis in all hearing loss claims. *See id.*

Moreover, requiring an extraschedular analysis in all hearing loss cases runs contrary to the purpose of extraschedular ratings: to recognize exceptional or unusual circumstances. *Compare* 38 C.F.R. § 4.1 (2016), *with* 38 C.F.R. § 3.321(b). Section 4.1 provides "that percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations" and that "the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." However, § 3.321(b)(1) provides that in the "exceptional case where the schedular evaluations are found to be inadequate," VA may approve "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." If the Board were required to conduct an extraschedular discussion in all hearing loss cases, that would suggest that the majority of, if not all, hearing loss claimants are under-compensated, which would in turn suggest an issue with the schedular rating criteria rather than the individual claimants' disability ratings. Stated otherwise, if the Board were required to engage in an extraschedular analysis in all hearing loss cases, the average loss of earning

capacity due to hearing loss could no longer be considered average. Such an outcome appears contrary to the Secretary's determination as to how hearing loss should be compensated.

To be clear, although the Court holds that the rating criteria for hearing loss contemplate the functional effects of difficulty hearing and understanding speech, the Court does *not* suggest that the rating criteria contemplate *all* functional impairment due to a claimant's hearing loss. On the contrary, a hearing loss claimant could provide evidence of numerous symptoms, including—for purposes of example only—ear pain, dizziness, recurrent loss of balance, or social isolation due to difficulties communicating, and the Board would be required to explain whether the rating criteria contemplate those functional effects. In general, however, the Secretary's decision to rate hearing loss disabilities by the application of a veteran's audiometric testing results to rating tables does not alter the circumstances under which the Board must discuss whether referral is appropriate in an individual veteran's appeal. *See Yancy*, 27 Vet.App. at 493; *Thun*, 22 Vet.App. at 115; *Dingess*, 19 Vet.App. at 499; *Smallwood*, 10 Vet.App. at 98; *see also Lendenmann*, 3 Vet.App. at 349.

## C. Application to the Appellant's Claim

Turning to the merits of the appellant's claim, he asserts that his hearing loss results in difficulty in distinguishing sounds in a crowded environment, locating the source of sounds, understanding conversational speech, hearing the television, and using the telephone. Appellant's Br. at 8. These difficulties, however, are each a manifestation of his difficulty hearing or understanding speech which, as the Court discussed above, is contemplated by the schedular rating criteria for hearing loss. *See ante* at 4-5. These functional effects thus did not reasonably raise the issue of whether referral for extraschedular consideration was warranted, the appellant did not assert below that his schedular rating was inadequate, and he does not now otherwise identify any evidence of record which reveals that his hearing loss presents an exceptional or unusual disability picture.[4] Accordingly, the Court holds that the Board was not obligated to discuss extraschedular referral in

---

[4] The Board noted that the appellant "has reported some dizziness, unsteadiness, and imbalance" but it explained that "there is no indication in the VA treatment records or upon any VA medical examination that these symptoms are due to his [bilateral hearing loss]." R. at 12. On appeal, the appellant neither challenges the Board's finding that his dizziness, unsteadiness, and imbalance are not attributable to his bilateral hearing loss nor cites evidence suggesting otherwise.

this case. *See Yancy*, 27 Vet.App. at 493. Nevertheless, as the Board *did* provide an extraschedular analysis, the Court will discuss it.

In its decision, the Board found that the appellant's "symptoms and their resultant effects are contemplated adequately by th[e rating] criteria" and that his service-connected bilateral hearing loss "disability picture is not unusual or exceptional," as "the criteria reasonably describe it." R. at 12. In so finding, the Board explained that in October 2004, VA issued the appellant a hearing aid for his left ear. R. at 11; *see* R. at 1076-77. The Board discussed a February 2013 VA medical examination which noted that the appellant used his hearing aid on a part-time basis and that "he reported difficulty understanding and difficulty hearing in most situations" and that "this difficulty is worse in noisy situations." R. at 11-12; *see* R. at 645. The Board noted the appellant's testimony at the October 2006 Board hearing in which he "testified that having to ask others to repeat themselves is embarrassing, that he has to turn the television volume up, and that he does not know where sound is coming from in noisy situations which makes them overwhelming." *Id.*; *see* R. at 955. The Board also discussed the February 2013 VA examiner's opinion, with respect to the appellant's ability to work, that he "would have difficulty locating sounds particularly without his hearing aid" and that he "should be able to use the telephone with his right ear and to communicate in most situations especially if given preferential seating." R. at 12; *see* R. at 645. The Board determined that "the resultant effect of [the appellant's] symptoms[,] in combination[,] is difficulty hearing." R. at 13. Ultimately, the Board concluded that as "the rating criteria are adequate, referral for consideration of the assignment of an extraschedular rating is not warranted." *Id.*

The appellant asserts that "the Board failed to offer any explanation, beyond a cursory conclusion" that the schedular criteria were adequate, for its determination that referral for extraschedular consideration was not warranted and cites evidence that he argues the Board failed to address, namely his difficulty distinguishing sounds in a crowded environment, locating the source of sounds, understanding conversational speech, hearing the television, and using the telephone. Appellant's Br. at 8. As discussed at length above, however, the Board specifically accounted for the appellant's resultant effects of his hearing loss, but determined that his symptoms were not exceptional or unusual. R. at 11-13. The Board discussed the appellant's entire disability picture and ultimately determined that, given that his disability picture was not exceptional or unusual, the schedular rating criteria adequately contemplated his hearing loss. R. at 6-13; *see*

9

*Yancy*, 27 Vet.App. at 494. The Court holds that, when read as a whole, the Board's decision is understandable and facilitates judicial review. *See id.; Thun*, 22 Vet.App. at 115; *see also Prickett v. Nicholson*, 20 Vet.App. 370, 375 (2006) (Board decision generally should be read as a whole).

Further, although the appellant asserts that the Board misapplied the second *Thun* step, his arguments are unavailing. Appellant's Br. at 10-13. A review of the record reveals that there is no evidence of marked interference with employment or frequent periods of hospitalization or any other evidence that would render his disability picture as "exceptional or unusual." *See* 38 C.F.R. § 3.321(b). Moreover, given the Board's determination that the first step of *Thun* was not satisfied, and assuming without deciding that the Board erred in its analysis of the second *Thun* step, any error is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (holding that the Veterans Court must "take due account of the rule of prejudicial error"); *Yancy*, 27 Vet.App. at 494. The appellant has not alleged any symptoms that can be considered exceptional or unusual for a claimant suffering from hearing loss and does not cite evidence that the Board failed to consider. The Court holds that the appellant has failed to demonstrate clear error in the Board's finding that referral for extraschedular consideration was not warranted, and its decision is understandable and facilitates judicial review. *See Thun*, 22 Vet.App. at 115; *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *see also* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

### D. Other Matters

Finally, although the Court acknowledges the limits on its ability to review the content of the rating schedule, it will offer a few additional comments regarding VA's evaluation of hearing loss. The rating criteria for hearing loss operate in a manner unique among the other disabilities in the rating schedule by mechanically applying test results to a table without expressly listing any specific symptoms or functional effects. This distinctiveness has led to confusion and inconsistent results for both veterans suffering from hearing loss and adjudicators evaluating their claims. Notwithstanding the Court's holding that the rating criteria for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment, the lack of explicit symptoms in the rating criteria complicates VA's evaluation and the Court's review of hearing loss cases. The Court is thus compelled to question whether it is time for VA to revisit this portion of the rating schedule in a manner addressing the concerns of the appellant, the majority, and our dissenting colleague. If the Secretary were to revise the rating criteria for hearing loss and provide additional guidance on what symptoms the rating criteria contemplate, it could only improve agency adjudication and judicial review of hearing loss claims.

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's June 1, 2015, decision is AFFIRMED.

SCHOELEN, *Judge*, dissenting: At the outset, I agree with the majority's assessment that the Board is only required to conduct an extraschedular analysis when the issue is reasonably raised by the parties or by the record. *See Yancy v. McDonald*, 27 Vet.App. 484, 493 (2016) (noting that the Board is required to consider referral for extraschedular consideration "[w]here there is evidence in the record that shows exceptional or unusual circumstances or where the veteran has asserted that a schedular rating is inadequate" (citing *Colayong v. West*, 12 Vet.App. 524, 536 (1999))); *see also Thun v. Peake*, 22 Vet.App. 111, 115 (2008) ("When either a claimant or the evidence of record suggests that a schedular rating may be inadequate, the Board must specifically adjudicate the issue of whether referral for an extraschedular rating is warranted."), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009). However, I write separately because I believe that the rating criteria

are inadequate to contemplate a veteran's functional effects and entire disability picture[5], and I believe the Board in this case provided an inadequate statement of reasons or bases regarding its refusal to refer the hearing loss claim for an extraschedular evaluation.

The fundamental problem arises because the rating schedule for hearing loss does not explain what the effects of the match of puretone threshold with speech discrimination should be. 38 C.F.R. §§ 4.85 (2016), 4.86 (2016). Sections 4.85 and 4.86 consist of tables designed to identify different levels of hearing loss in a controlled environment, but the tables do not address the functional effects or severity of a veteran's hearing loss. Instead, the rating schedule produces only Roman numerals. Although the rating schedule undoubtedly contemplates hearing loss, *see Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992), it is impossible for the Court to interpret with any particularity the severity or functional effects of a veteran's hearing loss simply by seeing, for example, Roman numeral "IV."

VA attempts to solve this quandary by pointing to the 2002 VA Clinician's Guide and the legislative history of §§ 4.85 and 4.86. As the Secretary himself notes, the Clinician's Guide is an instructive, but not legally binding, document that gives each examiner discretion as to how to conduct an examination in an individual case. Secretary's Supplemental Brief at 13-14; *see Allin v. Brown*, 6 Vet.App. 207, 214 (1994); VA CLINICIAN'S GUIDE, § 1.1 (2002) ("The Clinician's Guide and any of its parts (worksheets) are intended solely as a guide for clinicians, and it is not legally binding on a clinician to perform all portions of the examination protocol."). Moreover, the Board does not cite the Clinician's Guide anywhere in the decision on appeal, the Court cannot locate a more recent (post-*Martinak*) version of the guide, and VA does not indicate if or how the hearing loss provisions of the guide are implemented by VA examiners. Accordingly, the Clinician's Guide is of minimal persuasive value and cannot add anything substantive to the regulatory scheme. Similarly, the regulatory history of §§ 4.85 and 4.86 does not describe the functional effects or

---

[5] Although the majority highlights this Court's statutory prohibition on reviewing the "schedule of ratings for disabilities . . . or any action of the Secretary in adopting or revising that schedule," n.3 (quoting 38 U.S.C. 7252(b)), *supra*, I would simply note that the appellant does not ask the Court to review the rating schedule for its adequacy. Rather, the appellant's argument regarding extraschedular consideration requires the Court to review the severity and symptomatology of his hearing condition that the rating schedule does not contemplate. *See Thun*, 22 Vet.App. at 115; *Colayong*, 12 Vet.App. at 536.

symptomatology contemplated by the regulations because the regulations themselves are devoid of functional effects and symptoms.

Under this Court's holding in *Thun*, to determine whether the schedular rating criteria adequately contemplate the veteran's disability picture, the Board must compare "the level of *severity* and *symptomatology* of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Thun*, 22 Vet.App. at 115 (emphasis added). If an exceptional disability picture is found, the regional office or Board must determine whether related factors exist, such "as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1); *Thun*, 22 Vet.App. at 116. Because no symptoms are listed in the rating schedule for hearing loss, there is no way to adequately compare the "level of severity and symptomatology" to the rating criteria as *Thun* requires when determining whether the schedular rating criteria adequately contemplate a veteran's disability picture.

It is precisely for this reason that the Court held in *Martinak* that "a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report." *Martinak v. Nicholson*, 21 Vet.App. 447, 455 (2007). In formulating its holding, the Court explicitly noted internal VA guidance that "reaffirmed the need for VA audiologists to describe the effect of a hearing disability on a claimant's occupational functioning and daily activities." *Id.* (citing Revised Disability Examination Worksheets, VA Fast Letter 07-10 (Apr. 24, 2007) (on file with VA)). The Court further reasoned that "[t]he policy of describing the results of all tests conducted makes sense, particularly in the context of the extraschedular rating provision," and that "*[u]nlike the rating schedule for hearing loss, § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extraschedular rating is warranted*." *Id.* (emphasis added).

As the majority correctly states, *Martinak* only directs VA audiologists to note the functional effects of a veteran's hearing loss, and not the Board; however, nothing in *Martinak* absolves the Board of its responsibility to provide an adequate statement of reasons or bases in its decision sufficient to facilitate judicial review. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 55-57 (1990). Once adjudicators have functional-effects information rendered by VA examiners, they must address it. *See Caluza v. Brown*,

7 Vet.App. 498, 506 (1995) (noting that, to comply with its reasons or bases requirement, the Board must provide the reasons for its rejection of any material evidence favorable to the claimant), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Despite this duty to address the information, §§ 4.85 and 4.86 provide no actual guidance on how to analyze the information.

Therefore, no matter how extensive the Board's statement of reasons or bases is, I do not believe that that statement can ever sufficiently fill in the gaps in the rating schedule. The majority fails to explain how the Board could review the functional effects of hearing loss and match those functional effects with nonexistent criteria. If the Board were permitted to do so, their analysis would be tantamount to a *Colvin* violation. *Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (holding that the Board "must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion"); *see Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011) ("[U]nder *Colvin*, when a Board inference results in a medical determination, the basis for that inference must be independent and it must be cited."). A regulatory mechanism already exists to fill the gap between functional effects listed and functional effects contemplated by the rating schedule – extraschedular evaluation. *Cf. Johnson v. McDonald*, 762 F.3d 1362, 1366 (Fed. Cir. 2014) (stating that "[38 C.F.R.] § 3.321(b)(1) performs a gap-filling function").

For these reasons, I would remand the case for the Board to provide an adequate statement of reasons or bases regarding its refusal to refer the hearing loss claim for an extraschedular evaluation. Therefore, I respectfully dissent.

14