Citation Nr: 1717645 
Decision Date: 05/22/17 Archive Date: 06/05/17

DOCKET NO. 13-07 440 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUE

Entitlement to a compensable evaluation for bilateral hearing loss. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

B. Cannon, Associate Counsel


INTRODUCTION

The Veteran served in the United States Army from July 1966 to August 1969. He was honorably discharged. 

This matter comes before the Board of Veterans' Appeals (Board) from a February 2012 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona. A hearing has not been requested. 

In a March 2016 decision, the Board remanded the claim in order to obtain outstanding VA treatment records and obtain a new medical examination. The claim has now been returned to the Board for review. Upon reviewing the development since March 2016, the Board finds there has been substantial compliance with its remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance"); Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with the remand orders). 

In June 2016, the RO issued a supplemental statement of the case in response to the information obtained. The Veteran has argued that a remand is necessary because the June 2016 supplemental statement of the case cited to evidence that is not of record-a December 2011 audiogram from the Phoenix VAMC. See April 2017 Appellate Brief. The Board has located the audiogram in the Veteran's VBMS file. It is in a document with a VBMS receipt date May 23, 2016, and a "Document Type" description of "Medical Treatment Record - Government Facility." A remand is therefore not required to obtain this evidence. Thus, the Board will proceed to review and decide the claim with respect to the issues now on appeal based on the evidence that is of record.


FINDING OF FACT

For the entire time on appeal, the Veteran's bilateral hearing loss was manifested by level I or II hearing in the right ear and level II or III hearing in the left ear. 


CONCLUSION OF LAW

The criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.7, 4.85, 4.86, Diagnostic Code 6100 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies in the instant case.

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). VCAA notice should be provided to a claimant before the initial unfavorable RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The claim arises from disagreement with the initial disability rating that was assigned following the grant of service connection. Courts have held that once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The Veteran's service treatment records are associated with the claims file, as are VA and private medical records. The Veteran has not referenced any other pertinent, obtainable evidence that remains outstanding. Further, the VA medical examinations and opinions are adequate, as they are predicated on a substantial review of the record and medical findings, and consider the Veteran's complaints and symptoms. 38 C.F.R. § 3.159(c)(4); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Accordingly, the Board finds VA's duty to assist has been met. 38 C.F.R. § 3.159(c)(4).

II. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). 

VA has a duty to consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Hart v. Mansfield, 21 Vet. App. 505 (2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Schedular ratings

To evaluate the degree of disability from defective hearing, the rating schedule establishes eleven auditory acuity levels from level I for essentially normal acuity through level XI for profound deafness. 38 C.F.R. § 4.85. To evaluate an individual's level of disability, Table VI is used to assign a Roman numeral designation for hearing impairment based on a combination of the percent of speech discrimination and the puretone threshold average. 38 C.F.R. § 4.85(b). Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment for each ear. 38 C.F.R. § 4.85(e).

The rating criteria provide for alternative ratings when an exceptional pattern of hearing is met. If the puretone threshold at each of the specified frequencies of 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, an evaluation can be based either on Table VI or Table VIa, whichever results in a higher evaluation. 38 C.F.R. § 4.86(a). When the puretone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, the Roman numeral designation for hearing impairment will be chosen from either Table VI or Table VIa, whichever results in the higher numeral, and that numeral will then be elevated to the next higher Roman numeral. 38 C.F.R. § 4.86(b).

The RO granted service connection for bilateral hearing loss at an initial rating of 0 percent effective July 31, 2009, and the Veteran is appealing that decision. Because the claim is an initial claim, the Board will consider evidence of symptomatology from the date that the claim was filed. 38 C.F.R. § 3.400(o). This includes the results of audiological examinations dated August 2009, November 2009, December 2011, February 2012, and May 2016. 

In August 2009, the Veteran obtained an audiological examination from a private doctor. This examination contains the results of a speech recognition test, but does not state whether the test was a Maryland CNC speech recognition test. For this reason, the August 2009 private audiological exam is not competent evidence for rating purposes. See 38 U.S.C. § 4.85(a). 

The Veteran's November 2009 VA audiological examination does not provide for a compensable rating for hearing loss. Puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
30
35
60
65
55
LEFT
30
35
80
75
75

The average puretone threshold at 1,000, 2,000, 3,000, and 4,000 Hertz was 54 decibels in the right ear and 67 decibels in the left ear. Speech recognition ability, using the Maryland CNC test, was 100 percent in the right ear and 96 percent in the left ear. The audiological findings correspond to level I hearing in the right ear and level II hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Under Table VII, a designation of level I hearing in the right ear and level II hearing in the left ear yields a 0 percent evaluation. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In December 2011, the Veteran underwent an additional audiological examination. Since this examination did not report a speech recognition ability test, it cannot be used for rating purposes. See 38 C.F.R. § 4.85(a). 

The Veteran's February 2012 VA audiological examination does not provide for a compensable rating for hearing loss. Puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
35
60
65
70
LEFT
20
35
75
70
80

The average puretone threshold at 1,000, 2,000, 3,000, and 4,000 Hertz was 58 decibels in the right ear and 65 decibels in the left ear. Speech recognition ability, using the Maryland CNC test, was 96 percent in the right ear and 88 percent in the left ear. The audiological findings correspond to level II hearing in the right ear and level III hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Under Table VII, a designation of level II hearing in the right ear and level III hearing in the left ear yields a 0 percent evaluation. 38 C.F.R. § 4.85, Diagnostic Code 6100.

The May 2016 VA audiological examination also does not provide for a compensable rating for hearing loss. Puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
40
65
65
60
LEFT
25
45
80
75
75

The average puretone threshold at 1,000, 2,000, 3,000, and 4,000 Hertz was 58 decibels in the right ear and 69 decibels in the left ear. Speech recognition ability, using the Maryland CNC test, was 100 percent in the right ear and 88 percent in the left ear. The audiological findings correspond to level II hearing in the right ear and level III hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Under Table VII, a designation of level II hearing in the right ear and level III hearing in the left ear yields a 0 percent evaluation. 38 C.F.R. § 4.85, Diagnostic Code 6100.

Consideration has been given to 38 C.F.R. § 4.86 for exceptional patterns of hearing impairment, but this section is not applicable to the November 2009, February 2012, or May 2016 examination findings. For all of these examinations, puretone threshold levels were neither 55 decibels or higher at 1000, 2000, 3000 and 4000 Hertz, nor were they 30 decibels or less at 1,000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86.

The Board has considered the Veteran's lay statements about his hearing problems and their onset during service. The Board has also considered a September 2009 statement from the Veteran's former boss and an August 2009 statement from the Veteran's former spouse about the Veteran's hearing difficulties. The Board notes that the Veteran and others are competent to testify regarding such symptoms because such symptoms are within the knowledge and observations of lay witnesses. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). However, while the Board is sympathetic towards the Veteran's condition, compensation for hearing loss can only be obtained as a result of the mechanical application of Diagnostic Code 6100. Lay testimony by itself is insufficient. 

B. Extraschedular consideration 

The Board has also considered whether an extraschedular rating is warranted for the Veteran's service-connected bilateral hearing loss during the relevant period on appeal. Ratings shall be based as far as practicable upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2016).

The United States Court of Appeals for Veterans Claims (Court) has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Thun v. Peake, 22 Vet. App. 111, 115 (2008). Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. See Yancy v. McDonald, 27 Vet. App. 484 (2016); Doucette v. Shulkin, 28 Vet. App. 366 (2017) (holding that either the veteran must assert that a schedular rating is inadequate or the evidence must present exceptional or unusual circumstances); Sowers v. McDonald, 27 Vet. App. 472, 478 (2016) ("[t]he rating schedule must be deemed inadequate before extraschedular consideration is warranted"). Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as marked interference with employment and frequent periods of hospitalization. Thun, 22 Vet. App. at 116. Third, if the first two Thun elements have been satisfied, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun, 22 Vet. App. at 116. In other words, the first element of Thun compares a veteran's symptoms to the rating criteria, while the second element considers the resulting effects of those symptoms; if either prong is not met, then referral for extraschedular consideration is not appropriate. Yancy, 27 Vet. App. at 494-95.

With respect to the first prong of Thun, the evidence in the instant appeal does not establish such an exceptional disability picture as to render the schedular criteria inadequate. The schedular rating criteria for rating hearing loss provide for disability ratings based on audiometric evaluations, to include speech discrimination and puretone testing. Here, all the Veteran's hearing loss symptoms and described hearing impairments are contemplated by the schedular rating criteria. The Veteran's hearing loss disability has been manifested by difficulty hearing conversations in a crowded room and needing to regularly ask others to repeat themselves, which causes difficulties functioning in social environments. The schedular rating criteria specifically provide for ratings based on all levels of hearing loss in various contexts, as measured by both audiometric testing and speech recognition testing. The ability of the Veteran to hear sounds and voices is measured and rated by an audiometric test, as this test measures different frequencies and captures high frequency hearing loss from sources including voices, music, sirens, and certain high-pitched sounds. The ability of the Veteran to understand people and having to ask others to repeat themselves on a regular basis is rated by a speech recognition test, as this test measures conversation comprehension, words, and missed conversations. The schedular rating criteria specifically provide for ratings based on all levels of hearing loss, including exceptional hearing patterns which were demonstrated in this case, and as measured by both audiometric testing and speech recognition testing. See Doucette, 28 Vet. App. 366 (holding "that the rating criteria for hearing loss contemplate the functional effects of difficulty hearing and understanding speech"). 

The decibel loss and speech discrimination ranges designated for each level of hearing impairment in Tables VI and VIa were chosen in relation to clinical findings of the impairment experienced by veterans with certain degrees and types of hearing disability. The regulatory history of 38 C.F.R. §§ 4.85 and 4.86 includes revisions, effective June 10, 1999. See 64 Fed. Reg. 25,202 (May 11, 1999). In forming these revisions, VA sought the assistance of the Veteran's Health Administration (VHA) in developing criteria that contemplated situations in which a veteran's hearing loss was of such a type that speech discrimination tests may not reflect the severity of communicative functioning these veterans experienced or that was otherwise an extreme handicap in the presence of any environmental noise, even with the use of hearing aids. VHA had found through clinical studies of veterans with hearing loss that, when certain patterns of impairment are present, speech discrimination testing conducted in a quiet room with amplification of the sounds does not always reflect the extent of impairment experienced in the ordinary environment. The decibel threshold requirements for application of Table VIa were based on the findings and recommendations of VHA. The intended effect of the revision was to fairly and accurately assess the hearing disabilities of veterans as reflected in a real life industrial setting. 59 Fed. Reg. 17,295 (Apr. 12, 1994).

The inherent purpose of the schedular rating criteria is to determine, as far as practicable, the severity of functional impact resulting from a service-connected disability, including any resultant occupational and social impairment, and therefore contemplates the Veteran's difficulties functioning in a social environment due to hearing loss. Accordingly, the Board finds that the Veteran's reported hearing-related difficulties are factors contemplated in the regulations and schedular rating criteria. See also Doucette, 28 Vet. App. 366 (holding that "the rating criteria for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment, as these are precisely the effects that VA's audiometric tests are designed to measure . . . an inability to hear or understand speech or to hear other sounds in various contexts . . . are contemplated by the schedular rating criteria"). 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extraschedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. 

Comparing the Veteran's disability level and symptomatology of the bilateral hearing loss to the rating schedule, the degree of disability throughout the entire period under consideration is contemplated by the rating schedule and the assigned ratings are, therefore, adequate. There are no additional expressly or reasonably raised issues presented on the record. Absent any exceptional factors associated with hearing loss, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Finally, in a January 2014 VA mental health outpatient note, the Veteran noted that was driving a taxi, enjoying it, and making good money at it. It does not appear, therefore, that the Veteran's service-connected tinnitus and hearing loss have resulted in his unemployability. In light of these findings, the Board will not infer a claim of TDIU. Rice v. Shinseki, 22 Vet. App. 447 (2009).


ORDER

Entitlement to a compensable evaluation for bilateral hearing loss is denied. 




____________________________________________
Michael J. Skaltsounis 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs