﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/02/19

DOCKET NO. 181228-2124
DATE: May 2, 2019

ORDER

An effective date earlier than October 11, 2013 for the grant of service connection for posttraumatic stress disorder (PTSD) is denied.

An initial compensable rating for bilateral hearing loss is denied.

An initial rating higher than 10 percent for tinnitus is denied.

An initial 50 percent rating for posttraumatic stress disorder (PTSD) prior to March 8, 2017 is granted; from that date, a 70 percent rating, but no higher, is granted.

REMANDED

Entitlement to a total disability rating based on individual unemployability (TDIU) prior to March 18, 2017 is remanded.

An effective date earlier than March 18, 2017 for the basic grant of eligibility to Dependents' Educational Assistance under 38 U.S.C. Chapter 35 (DEA benefits) is remanded.

FINDINGS OF FACT

1. The Veteran first filed a claim for service connection for PTSD on October 11, 2013.

2. Bilateral hearing loss was manifested by level I hearing in both ears.

3. The Veteran is assigned the maximum schedular rating for tinnitus. 

4. Prior to March 8, 2017, PTSD was manifested by feelings of worthlessness, reduced attention and concentration, and mood disturbances; from that date, it was manifested by suicidal ideation and a near-continuous panic or depression.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than October 11, 2013 for the grant of service connection for PTSD have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

2. The criteria for an initial compensable rating for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5103; 38 C.F.R. §§ 3.321, 4.1, 4.85, Diagnostic Code 6100.

3. The criteria for an initial rating higher than 10 percent for tinnitus have not been met. 38 U.S.C. §§ 1155, 5103; 38 C.F.R. §§ 3.321, 4.1, 4.87, Diagnostic Code 6260.

4. The criteria for an initial 50 percent rating for PTSD prior to March 8, 2017 have been met; from that date, the criteria for a 70 percent rating, but not higher, have been met. 38 U.S.C. §§ 1155, 5103; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the U.S. Army from September 1967 to May 1969. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an October 2014 rating decision. In May 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). He received a new rating decision in December 2018. That same month, he requested direct review by the Board of the evidence considered by the Agency of Original Jurisdiction (AOJ).

1. An effective date earlier than October 11, 2013 for the grant of service connection for PTSD

Section 5110(a), Title 38, United States Code, provides that “[u]nless specifically provided otherwise in this chapter, the effective date of an award based on an original claim... of compensation... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.” The implementing regulation, 38 C.F.R. § 3.400, similarly states that the effective date of service connection “will be the date of receipt of the claim or the date entitlement arose, whichever is the later.”

A review of the file shows that the Veteran filed his first claims for service connection, including for PTSD, on October 11, 2013. His claims file contains documents related to educational benefits prior to that date but nothing is related to service connection or other disability compensation. As a result, the October 2014 rating decision which granted service connection for PTSD correctly assigned October 11, 2013, the date the claim was received, as the effective date.

The only contention raised by the record regarding this issue is evidence showing that the Veteran had PTSD prior to October 11, 2013. However, the effective date of an award of service connection is not based upon the date of the earliest medical evidence, such as a diagnosis, which establishes entitlement, but instead on the date that the application upon which service connection was eventually awarded was filed with VA. Lalonde v. West, 12 Vet. App. 377 (1999).

2. An initial compensable rating for bilateral hearing loss

Evaluations of defective hearing range from 0 to 100 percent. This is based on impairment of hearing acuity as measured by the results of Maryland CNC controlled speech discrimination tests, together with the average hearing threshold level as measured by pure tone audiometric tests in the frequencies of 1000, 2000, 3000, and 4000 Hertz. To evaluate the degree of disability from service-connected hearing loss, the rating schedule establishes eleven auditory acuity levels ranging from numeric level I for essentially normal acuity, through numeric level XI for profound deafness. 38 C.F.R. § 4.85, Tables VI and VII, Diagnostic Code 6100. 

Table VI in 38 C.F.R. § 4.85 is used to determine the numeric designation of hearing impairment based on the pure tone threshold average from the speech audiometry test and the results of the Maryland CNC speech discrimination test. The vertical lines in Table VI represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. The horizontal columns in Table VI represent nine categories of decibel loss based on the pure tone audiometry test. The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the vertical row corresponding to the percentage of discrimination and the horizontal column corresponding to the pure tone decibel loss.

The percentage evaluation is derived from Table VII in 38 C.F.R. § 4.85 by intersecting the vertical column corresponding to the numeric designation for the ear having the better hearing acuity and the horizontal row corresponding to the numeric designation level for the ear having the poorer hearing acuity.

Private treatment records dated November 2013 include hearing tests. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 25 25 50 33

LEFT 30 30 50 75 46

Speech audiometry revealed speech recognition ability of 100 percent in both the right ear and left ear. These records do not specify whether the Maryland CNC speech test was used. Assuming it was, these findings correspond to a hearing levels of I in both ears. Under Table VII, this results in a 0 percent rating for hearing loss.

The Veteran underwent a VA examination in October 2014. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 30 35 55 38

LEFT 30 35 50 75 48

Speech audiometry revealed speech recognition ability of 96 percent in both the right ear and left ear. Again, this corresponds to hearing levels of I in both ears and a 0 percent rating under Table VII.

Finally, another VA examination was conducted in April 2017. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 30 35 40 65 43

LEFT 25 35 50 75 46

Speech audiometry revealed speech recognition ability of 98 percent in both the right ear and left ear. Again, this corresponds to hearing levels of I in both ears and a 0 percent rating under Table VII.

The Board has considered the effects of the Veteran’s hearing loss on his daily life. For example, during the October 2014 VA examination, he reported that he had to ask people to repeat themselves all the time. However, functional effects such as difficulty understanding speech are inherent in the rating criteria for hearing loss. Doucette v. Shulkin, 28 Vet. App. 366 (2017). Ratings for disability compensation for hearing loss are otherwise determined by the mechanical, meaning nondiscretionary, application of the criteria. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Therefore, an initial compensable rating is not warranted.

3. An initial rating higher than 10 percent for tinnitus

Tinnitus is rated under 38 C.F.R. § 4.87, Diagnostic Code 6260. The maximum schedular rating for tinnitus is 10 percent. In an October 2014 statement, the Veteran argued that he should be assigned separate ratings for tinnitus in each ear. However, the 10 percent rating under Diagnostic Code 6260 is applicable regardless of whether tinnitus is unilateral (one ear) or bilateral (both ears). Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006).

Neither the Veteran nor his representative have put forth any other argument for why a rating higher than 10 percent for tinnitus would be appropriate.

4. An initial rating higher than 30 percent for PTSD prior to March 18, 2017, and a rating higher than 70 percent thereafter

PTSD is rated under the General Rating Formula for Mental Disorders found in 38 C.F.R. § 4.130.

A 30 percent rating is assigned when symptoms such as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, or recent events), cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation).

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

From March 18, 2017, the Veteran was assigned a 70 percent rating. The Board finds that the 70 percent rating should be effective from March 8, 2017, because lay statements submitted by the Veteran on that date show reports of suicidal ideation consistent with the higher rating.

Prior to March 8, 2017, a 50 percent rating is warranted. An October 2013 private examination and October 2014 VA examination show that the Veteran’s PTSD disorder was manifested by symptoms associated with a 50 percent rating, including feelings of worthlessness, reduced attention and concentration and mood disturbances. Some documented symptoms could be associated with a 70 percent rating, such as throwing items and recurrent thoughts of death.

The Board finds the severity, frequency, and duration of the Veteran’s symptoms more closely approximate the symptoms contemplated by a 50 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 70 percent rating. For example, the Board notes that the Veteran expressed recurrent thoughts of death, which is similar to suicidal ideation, which is contemplated by the 70 percent criteria. Bankhead v. Shulkin, 29 Vet. App. 10 (2017). However, the severity, frequency, and duration of the Veteran’s thoughts did not rise to the level contemplated by the 70 percent disability rating. Suicidal ideation is a veteran’s thoughts of his or her own death or thoughts of engaging in suicide-related behavior. During the October 2013 VA examination, the Veteran reported current thoughts of death but denied suicidal ideation. He again denied suicidal ideation during the October 2014 VA examination. Therefore, his thoughts of death do not rise to the level contemplated by the 70 percent rating.

Similarly, his report of throwing items could be consistent with the “periods of violence” criterion for the 70 percent rating. However, given that the all of the other documented symptoms (depressed mood, sleep impairment, intrusive thoughts, poor concentration, etc.) are all consistent with no more than a 50 percent rating, the Board finds that throwing items, alone, would not warrant a higher 70 percent rating. Notably, this symptom was not reported during the October 2014 VA examination. 

The Board also finds the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 50 percent rating. The VA and private examinations document that the Veteran had a “solid” marriage and “excellent” relationship with his children. He also maintained some close friends. Collectively, these findings are not consistent with the inability to maintain effective relationships contemplated by the 70 percent rating.

From March 8, 2017, a rating higher than 70 percent is not warranted. A March 2017 private examination, April 2017 VA examination, and the Veteran’s lay statements from this period show that his PTSD was manifested by symptoms specifically associated with a 70 percent rating, including suicidal ideation and a near-continuous panic or depression. He also had symptoms that are not listed with a specific rating, such as easy startling. Many of his documented symptoms, including trouble sleeping, difficulty with concentration, mild memory loss and depressed mood are associated with the criteria for 30 or 50 percent ratings. Symptoms found in the criteria for the 100 percent rating, such as persistent delusions, an inability to perform activities of daily living, inability to maintain basic hygiene, or gross impairment in thought process or behavior have not been demonstrated.

The Board finds the severity, frequency, and duration of the Veteran’s symptoms more closely approximate the symptoms contemplated by a 70 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 100 percent rating. For example, the Board notes that the Veteran expressed suicidal ideation, which is similar to persistent danger of self-harm, which is contemplated by the 100 percent criteria. See Bankhead, supra. However, the severity, frequency, and duration of the Veteran’s suicidal ideation has not risen to the level contemplated by the 100 percent disability rating. In a March 2017 statement, the Veteran reported experiencing suicidal ideation “at times.” The March 2017 private examination noted that the Veteran’s PHQ-9 score was reflective of severe depression, which typically includes feelings that you would be better off dead, though the examination did not specifically document that the Veteran reported such feelings. During his April 2017 VA examination, he denied suicidal ideation. Therefore, the frequency and duration of his ideation is consistent with the 70 percent rating.

Finally, during his March 2017 private examination, the Veteran wife stated that he still associated with people he felt comfortable around. During the VA examination, reported still having several close friends, a good relationship with his daughter, and speaking at an elementary school once a year. This shows that he does not have total social impairment as contemplated by the 100 percent rating.

REASONS FOR REMAND

1. Entitlement to a TDIU prior to March 18, 2017

The Veteran was employed with the U.S. Postal Service for 14 years, from approximately 1996 to 2010. He indicated that he was unable to continue working there due to his PTSD. VA sent letters dated January 2017 and April 2017 to the U.S. Postal Service requesting records related to the Veteran’s employment. An April 2017 letter was also sent to U.S. Office of Personnel Management. To date, there does not appear to have been any response. A remand is required to allow VA to comply with the requirements for obtaining these federal records.

2. An effective date earlier than March 18, 2017 for the basic grant of eligibility to DEA benefits

The effective date for the Veteran’s eligibility for DEA benefits is based on the date of his TDIU. Because a decision on the remanded issue of entitlement to a TDIU prior to March 18, 2017 could significantly impact a decision on his DEA benefits claim, the issues are inextricably intertwined. A remand of the claim for DEA benefits is therefore required.

The matters are REMANDED for the following action:

1. Obtain the Veteran’s federal records from the U.S. Postal Service and/or the U.S. Office of Personnel Management. Document all requests for information as well as all responses in the claims file.

2. After the above development, and any additionally indicated development, has been completed, readjudicate the TDIU issue on appeal, including the inextricably intertwined issue of an earlier effective date for DEA benefits. If the benefits sought is not granted to the Veteran’s satisfaction, send the Veteran and his representative a Supplemental Statement of the Case and provide an opportunity to respond. If necessary, return the case to the Board for further appellate review.

 

JOHN Z. JONES

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Shamil Patel, Counsel