Citation Nr: 1829866 
Decision Date: 09/06/18 Archive Date: 09/24/18

DOCKET NO. 13-08 161 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to a disability rating in excess of 50 percent for service connected posttraumatic stress disorder (PTSD). 

2. Entitlement to an initial disability rating in excess of 10 percent for service-connected erosive esophagitis/Barrett' s esophagitis (esophageal condition). 

3. Entitlement to a temporary total evaluation for convalescence under 38 C.F.R. § 4.30 for surgery related to service-connected esophageal condition.


REPRESENTATION

Veteran represented by: Robert Chisholm, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. R. Higgins, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from December 1943 to May 1946. 

This matter is before the Board of Veterans' Appeal (Board) on appeal from rating decisions issued in October 2011 and March 2015 by the Department of Veteran Affairs (VA) Regional Office (RO) in Providence, Rhode Island.

The Veteran presented testimony at a hearing before the undersigned in May 2015. A transcript of the hearing is associated with the claims file. 

In September 2017, the Board remanded this matter for further development. 

In a January 2018 rating decision granted the issue of a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU), effective June 30, 2010. Additionally, the same rating decision increased the disability evaluation for the Veteran's service-connected PTSD to 50 percent disabling, effective June 30, 2010. Because the RO did not assign the maximum disability rating possible, the appeals for higher disability evaluations remain before the Board. AB v. Brown, 6 Vet. App. 35 (1993). 

This appeal was processed using the Virtual VA/VBMS paperless claim processing system. Accordingly, any future consideration of this Veteran's case should take into account the existence of this electronic record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C § 7107(a) (2) (2012).


FINDINGS OF FACT

1. The Veteran's PTSD was manifested by an occupational and social impairment with reduced reliability and productivity due to such symptoms as disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships, but not a total occupational and social impairment, or occupational and social impairment with deficiencies in most areas. 

2. Throughout the relevant rating period, the Veteran's persistent recurrent epigastric distress, dysphagia, pyrosis, and regurgitation, sleep impairment, vomiting due to his service-connected esophageal condition has been productive of considerable impairment of health, but not of a severe impairment of health.

3. The Veteran had surgery related to his service-connected esophageal condition in September 2015, but the operation did not require a month of convalescence. 


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 50 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Codes 9411, 9434 (2017). 

2. The criteria for entitlement to an initial rating of 30 percent (but no higher) for an esophageal condition have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.14, 4.114, Diagnostic Code 7346 (2017). 

3. The criteria for a temporary total evaluation for convalescence for a service connected disability have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107, 5110 (2012); 38 C.F.R. § 4.30 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

This claim was most recently remanded by the Board in September 2017. At that time, the RO was instructed as follows: (1) to retrieve outstanding medical records, (2) schedule the Veteran for a VA examination to determine the current severity of his service-connected disabilities, (3) contact the Veteran regarding any additional evidence regarding his claims, and (4) issue a Supplemental Statement of the Case (SSOC) if the claims remained denied. 

A claimant has the right to substantial compliance with remand directives. Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand by the United States Court of Appeals for Veterans Claims Court (Court) or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders); see also D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict compliance with the terms of a remand request, is required). Here, the outstanding medical records were obtained and associated with the record. The Veteran was scheduled for VA examinations to determine the severity of his service-connected disabilities, and the Veteran was contacted regarding any additional evidence. The claim was subsequently readjudicated, and an SSOC was issued in January 2018. 
 
As such, the Board finds that there has been substantial compliance with its September 2017 remand directives. The Board will now review the merits of the Veteran's claims. 
II. Increased Rating Claims

A. PTSD

The Veteran seeks entitlement to a disability evaluation greater than 50 percent for his service-connected PTSD. 

Disability ratings are assigned under a schedule for rating disabilities and based on a comparison of the veteran's symptoms to the criteria in the rating schedule. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Disability evaluations are determined by assessing the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the ratings schedule. Individual disabilities are assigned separate Diagnostic Codes, and ratings are based on the average impairment of earning capacity. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If there is a question as to which evaluation should be applied to the veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The primary focus in a claim for increased rating is the present level of disability. Although the overall history of the veteran's disability shall be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Additionally, a staged rating is warranted if the evidence demonstrates distinct periods of time in which a service-connected disability exhibited diverse symptoms meeting the criteria for different ratings throughout the course of the appeal. Fenderson v. West, 12 Vet. App, 119, 125-126 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

As such, the Board will analyze the evidence of record to determine the Veteran's current levels of disability. In doing so, the Board first notes that it has reviewed all of the evidence in the Veteran's claims file, placing an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no obligation to discuss, in detail, the extensive evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that the Board must review the entire record, but does not have to discuss each piece of evidence). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as it relates to the Veteran's claims. 

Under Diagnostic Codes 9434-9411 (major depressive disorder-PTSD), a 50 percent disability rating is warranted for occupational and social impairment with reduced reliability and productivity due to symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty understanding complex commands, impairment of short and long term memory, impaired judgment, impaired abstract thinking, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent disability rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.

A 100 percent disability rating is assigned total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, or for the veteran's own occupation or name. 38 C.F.R. § 4.130.

The symptoms listed in Diagnostic Code 9435 are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). In addition, in Mittleider v. West, 11 Vet. App. 181 (1998), the Court held that VA regulations require that when the symptoms and/or degree of impairment due to a veteran's service-connected psychiatric disability cannot be distinguished from any other diagnosed psychiatric disorders, VA must consider all psychiatric symptoms in the adjudication of the claim. 

The Veteran is currently assigned a disability rating of 50 percent for his service-connected PTSD. However, the Veteran contends that he is entitled to a higher disability rating for his service-connected PTSD. 

The Veteran's treatment records detail ongoing treatment related to the Veteran's PTSD with associated anxiety and depression. The Veteran consistently denied a history of suicidal thoughts, suicidal plans, and prior attempts. The Veteran also denied homicidal ideation. The Veteran, however, did report depressed mood, significant weight change, inappropriate guilt, feelings of worthlessness, sleep impairment, and flashbacks or nightmares. 

The Veteran underwent a VA examination in October 2010. The Veteran provided that he experienced nightmares and stress related to providing for his family financially. At that time, the Veteran described the relationship with his wife, children, and friend as good. The Veteran provided that, "I think I do quite well with communication with other human beings." The Veteran reported playing the saxophone 4-5 times a week. The examiner noted that the Veteran appropriately interacts with others, engages in social activities, capable of basic activities of daily living, and able to meet family responsibilities. The Veteran was noted to be articulate, well groomed, pleasant, and euthymic during the examination. The Veteran did not present any impairment of thought process or communication, delusions, panic attacks, hallucinations, suicidal thoughts, ideation, plan, or intent, homicidal ideation, memory impairment and lack of impulsive control. The examiner noted the Veteran's depressed mood and sleep impairment. The Veteran was alert and fully oriented. The Veteran's speech was noted to be normal. The examiner described the severity of the Veteran's symptoms as mild and duration and frequency of symptoms as brief or infrequent. The examiner provided that the Veteran's employment, activities of daily living, and routine responsibilities, and relationships were not currently affected by his PTSD symptoms. The examiner noted a mild impact on the Veteran's quality of life. The examiner specifically identified the areas of family role functioning and social relationships as areas affecting the Veteran's quality of life. The examiner assigned a GAF score of 62. 

In October 2011 the Veteran was afforded a VA examination to determine the severity of his PTSD. The examiner noted the Veteran's diagnoses of PTSD and a depressive disorder. The examiner provided that the Veteran presented occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication. At that time, the Veteran reported stress due to financial strain of supporting his son and daughter that lived with him, but reported a good relationship with his wife of 60 years. The examiner noted the Veteran suffered from depressed mood, anxiety, chronic sleep impairment, and disturbances of motivation and mood. The examiner also found the Veteran capable of managing his financial affairs. The Veteran described his mood as depressed and irritable such that he cannot play his saxophone. The Veteran also reported loss of energy and excessive feelings of self-blame in regard to not spending enough time with his adult son. The Veteran endorsed some occasional thoughts that life is not worth living but denied past/current thoughts of suicide. The Veteran also endorsed homicidal ideation directed at a particular individual during the early part of his marriage, but denied any past or current intent, plans, or attempts to harm the individual. The Veteran provided that he has gun and couple of BB-guns locked in a safe. The examiner observed the Veteran to be appropriately dressed and very well groomed with excellent hygiene. The Veteran was fully oriented and alert. The Veteran's attention was not impaired, abstract reasoning was intact, and memory was intact generally, with some impairment in immediate memory due to anxiety. The Veteran was cooperative with a euthymic, anxious, and irritable mood. There was no evidence of obsessions, compulsions, ideas of reference, hallucinations, delusions, specific fears, social fears, hypomania, mania, panic attacks, or agoraphobia. Risk assessment revealed no evidence of suicidal or homicidal ideation, no evidence of impaired impulse control, and denial of any physical fights, history of legal problems or substance abuse. Insight and judgment were also noted to be adequate and intact. The examiner assigned a GAF score of 58. 

The Veteran was provided a VA PTSD examination in September 2015. At that time, the Veteran reported intrusive and distressing thoughts, nightmares, and flashbacks, avoidance of thoughts, and avoidance of activities, hyperarousal, and hypervigilance. The Veteran also reported feelings of anxious, sadness, and anger. The Veteran reported the occasional feelings of depressed mood, but denied anhedonia, insomnia, changes in appetite, loss of energy, concentration impairment, and feelings of worthlessness, guilt, or suicidal ideation. The Veteran also stated an increase of depressed feelings related to the death of his wife. The examiner opined that the Veteran's occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication. The Veteran reported that his 63 years of marriage to his late wife was "very very good," but familial stress, such as their son's substance and financial issues, conflict between his daughters, and other family issues, placed a strain on the relationship since 2010. The Veteran reported that he was very active socially. The Veteran provided that he has been retired since 1990. 

The examiner provided that the Veteran experienced depressed mood and anxiety. The examiner observed the Veteran to be casually dressed and appropriately groomed. The Veteran was oriented in all three spheres, pleasant, cooperative, and maintained good eye contact. There was no evidence of psychosis and the Veteran denied suicidal ideation. The examiner provided that the Veteran was capable of managing his affairs. The Veteran denied sleep impairment and irritability. The examiner described the Veteran's symptoms are generally mild. However, the examiner provided that during the Veteran's episodes of increased anxiety his social functioning is likely to be impaired. The Veteran reported two episodes per week of increased anxiety, in which he isolates himself from others. The examiner noted that the Veteran did not identify any ways that his depression or anxiety symptoms would impact his occupational functioning. To that end, the Veteran reported that his concentration, energy and ability to get along with other were not problematic. 

The Veteran was also provided with a VA PTSD examination in November 2017. The examiner provided that the Veteran's mental diagnoses of PTSD, anxiety disorder, and depression contributed to mild or transient symptoms which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. The examiner noted that Veteran reported living with his one his daughters and significant stress related to his grandson's mental illness. The Veteran also reported generally positive relationships with his children, having friends, playing in a band, and attending church regularly. The examiner noted the Veteran to be independent in his actives of daily life. The Veteran reported recurrent brief episodes of depression, chronic anxiety/feeling "on edge," frequent worries about his family, psychological reactivity to trauma cues, chronic sleep disruption, and cognitive inefficiencies. The Veteran denied any history of suicidality and of psychiatric hospitalizations. 

The examiner noted that the Veteran exhibited depressed mood, anxiety, chronic sleep impairment, and difficulty adapting to stressful circumstances, including work or a work like setting. The examiner noted the Veteran to be appropriately groomed and dressed, alert and fully oriented. The Veteran's speech was clear and fluent with normal volume, rate, and tone. The Veteran was appropriate and reciprocal in conversation, and expressed thoughts that were logical and goal-directed. There was no evidence of psychotic thought process or delusional content. The Veteran's mood and affect were pleasant and euthymic. Sense of humor and cognition were intact. The examiner opined that the Veteran continued to struggle with, "very mild symptoms of his service-connected PTSD." Moreover, there was no evidence that his mental condition interfered with his occupational functioning as a music teacher, "despite complaints of feeling overwhelmed at times. The Veteran continued to play in a band and to compose and arrange music. The examiner noted the Veteran's strong support system, which consisted of his children, friends, and fellow church members. The examiner additionally opined that the combination of the Veteran's mental conditions with his various medical problems would pose a significant challenge to his ability to initiate and sustain gainful employment. 

Upon reviewing the collective psychiatric reports and considering the frequency, severity, and duration of the Veteran's symptoms for this time period, the Board finds that a disability rating of 70 or 100 percent is not warranted. 

During this period, the Veteran reported such ongoing symptoms as depression, anxiety, difficulty adapting to stressful circumstances, nightmares, flashbacks, avoidance of thoughts, avoidance of activities, hyperarousal and chronic sleep impairment, which are properly embodied in the criteria for a 50 percent disability rating. The Veteran consistently denied suicidal/homicidal ideations; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; and inability to establish and maintain effective relationships to justify an increased rating. While the absence of these symptoms is not always determinative, the Veteran failed to show other symptoms of similar severity, frequency, and duration. 

The VA examiners consistently found the Veteran to be appropriately groomed and dressed, alert and fully oriented, possessing clear and fluent speech with normal volume, rate, and tone, logical and goal directed thoughts, and pleasant and euthymic during his examinations. Despite the Veteran's diagnoses, he has maintained generally positive relationships with his family and friends. The Veteran also still composes and arranges music along with playing in a band. The VA examiners have also consistently opined that the Veteran's symptoms related to his mental diagnoses are mild in severity and the absence of a total or significant occupational or social impairment due to his symptoms related to his service-connected PTSD. Moreover, the Veteran appeared moderately capable of functioning independently, appropriately, and effectively during this time. The Veteran received GAF scores ranging from 58-62. A GAF score of 51-60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with coworkers). A GAF score of 61-70 represents mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV). Therefore, the Board finds that the reported symptomatology more closely aligns with that embodied in the criteria for a 50 percent disability rating. 

The Board acknowledges the Veteran's statements regarding his symptomology due to his service-connected PTSD, specifically his statements at his May 2015 Board hearing. The Veteran reported episodes of anxiety attacks, nightmares, flashbacks, stress, and irritability. The Veteran also contends that his service-connected PTSD affects greatly affects his daily life activities. The Board acknowledges that the Veteran is competent to report his observable symptoms relating to his PTSD with anxiety disorder. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). During the majority of the period, the Veteran has shown a mild level of severity related to his service-connected PTSD. However, there is no indication from his statements that his symptoms warrant a rating in excess of the current 50 percent disability rating. 

Throughout the period on appeal, the criteria for a disability rating in excess of 50 percent under Diagnostic Code 9411 have not been met. 38 C.F.R. §§ 4.130, Diagnostic Code 9411 (2017). 

In sum, the Board concludes that the symptomatology noted in the medical and lay evidence has been adequately addressed by the current rating. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). 

B. Esophageal Condition 

The Veteran seeks a disability rating in excess of 10 percent for his service-connected erosive esophagitis. 

The Veteran's erosive esophagitis is rated under 38 C.F.R. § 4.114, Diagnostic Code 7346. Under Diagnostic Code 7346, a 60 percent rating is assigned for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. A 30 percent rating is assigned for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. A 10 percent rating is assigned for hiatal hernia with two or more of the symptoms for the 30 percent rating of less severity. The Veteran is currently assigned a 10 percent rating for his service-connected erosive esophagitis. 

The record reflects that the Veteran is diagnosed with the following esophageal conditions gastroesophageal reflux disease (GERD), Zenker diverticulum, and Barrett's esophagus. Additionally, the Veteran underwent a diverticulectomy for his zenker diverticulum in 2015, which he claims improved his symptoms, but still suffers from chronic reflux and heartburn. 

The Veteran was provided with a VA examination in November 2013 regarding his erosive esophagitis. The Veteran reported dealing with acid reflux and difficulty swallowing for many years. The examiner noted the symptoms of heartburn, acid reflux, and weight loss as a result of his esophageal conditions. The Veteran's treatment plan included taking a half of teaspoon of baking soda 2 times a day. The examiner noted that the Veteran's baseline weight was 207 pounds, but at the time of the examination the Veteran weighed 167 pounds. The examiner noted that the Veteran's esophageal condition did not impact his ability to work. The examiner also opined that the Veteran did not have any other pertinent physical findings, complications, conditions, signs and/or symptoms related to his esophageal conditions. 

In February 2016 VA examination report, the Veteran reported that he underwent an operation in September 2015 that has improved his swallowing. The examiner noted the symptoms of dysphagia, pyrosis, reflux, regurgitation, sleep disturbance, nausea, and vomiting. The examiner noted severe spasm of the esophagus. The Veteran's treatment plan did not include taking continuous medication for his esophageal condition. The examiner also noted that the Veteran gained 12 pounds since November 2015. The examiner noted that the Veteran's esophageal condition did not impact his ability to work. The examiner also opined that the Veteran did not have any other pertinent physical findings, complications, conditions, signs and/or symptoms related to his esophageal conditions. 

The November 2017 VA examination report indicates that the Veteran suffered from persistent recurrent epigastric distress, dysphagia, pyosis, reflux, regurgitation, pain, sleep disturbance (4 or more episodes a year), and vomiting (1 episode a year). The Veteran reported that his voice is hoarse due to his esophageal conditions. The examiner opined that the Veteran's esophageal conditions would impact his ability as a music teacher due to hoarseness and an occasional cough. The examiner also opined that the Veteran did not have any other pertinent physical findings, complications, conditions, signs and/or symptoms related to his esophageal conditions. 

Based on the foregoing evidence, the Board finds that the Veteran is entitled to an initial rating in excess of 10 percent for his service-connected esophageal condition. 

During the period on appeal, the Veteran has shown the symptoms of persistent recurrent epigastric distress, dysphagia, pyrosis, reflux, regurgitation, sleep disturbance, nausea, and vomiting. The Veteran also reported difficulty swallowing and issues with gaining weight prior to his September 2015 diverticulectomy. The Veteran has reported that since his operation has improved and the objective medical evidence indicates that the Veteran has gained weight since November 2013. Moreover, the November 2017 VA examiner held that the Veteran's ability to work as a music teacher would be impacted negatively due to hoarseness and an occasional cough, which are a product of the Veteran's esophageal condition. 

Under Diagnostic Code 7346, a 30 percent rating is assigned for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. 38 C.F.R. § 4.114, Diagnostic Code 7346. A 60 percent rating is assigned for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. Thus, the question for the Board is whether the Veteran's reported symptomology is of considerable or severe impairment. 

The Veteran finds that the Veteran's symptoms related to his esophageal condition contributes to a considerable impairment of the Veteran's health. During this period, the Veteran experienced weight-loss which could be due to the Veteran's difficulty swallowing. The Veteran's September 2015 diverticulostomy improved his ability to swallow, and the Veteran has gained weight since the operation. However, the Veteran still suffers from persistent recurrent epigastric distress, dysphagia, pyosis, reflux, regurgitation, pain, sleep disturbance (4 or more episodes a year), and vomiting (1 episode a year) due to his service-connected esophageal condition. The Veteran also suffers from hoarseness due to his esophageal condition, which has greatly impacted the Veteran's ability to work as a music teacher. Due to the aforementioned evidence, the Veteran finds that his symptomology related to his esophageal condition causes a considerable impairment of the Veteran's health, thus he is entitled to a 30 percent disability rating under Diagnostic Code 7346. 

The Board does not consider the symptoms to be a severe impairment of health. The Veteran has not shown hematemesis, melena with moderate anemia, or other symptom combinations productive of a severe impairment of health. The Board notes that the Veteran experienced weight loss prior to his September 2015 diverticulectomy, but he did not present other symptoms of similar severity, frequency, and duration to reach a level of a severe impairment. Moreover, the Veteran's weight has stabilized and his swallowing has improved. The VA examiners consistently found no other pertinent physical findings, complications, conditions, signs and/or symptoms related to his esophageal conditions. Therefore, the Board finds that the reported symptomatology more closely aligns with that embodied in the criteria for a 30 percent disability rating. 

The Board further finds that the Veteran was not entitled to additional or higher ratings under any of the other diagnostic codes relating to the digestive symptoms. Specifically, the record reflects that the Veteran has reported difficulty swallowing. Under 38 C.F.R. § 4.114 , Diagnostic Code 7203, a 30 percent rating is assigned for moderate stricture of the esophagus, and higher ratings are assigned for more severe stricture of the esophagus. The Board finds that the record reflects that any stricture of the esophagus the Veteran may have did not rise to the level of "moderate" at any time during the relevant rating period. The Veteran reported difficulty swallowing prior to his September 2015 diverticulectomy, however his swallowing has improved since that operation. The Board does not consider such symptoms, in terms of frequency and severity, to rise to the level of moderate. Therefore, the Board concludes that the Veteran is not entitled to a higher or additional rating under Diagnostic Code 7203. The Board further finds that none of the other diagnostic codes relating to the digestive system are for application in rating the Veteran's esophageal condition. 

Throughout the period on appeal, the criteria for a disability rating in excess of 10 percent under Diagnostic Code 7346 have been met and a 30 percent disability rating is granted. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.114, Diagnostic Code 7346 (2017). 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). 

III. Temporary Total Evaluation for Convalescence

The Veteran contends that he is entitled to a temporary total evaluation for convalescence following his September 2015 endoscopic pharyngescophageal diverticylostomy. 

Pursuant to 38 C.F.R. § 4.30, a total disability rating (100 percent) will be assigned without regard to other provisions of the rating schedule when it is established by report at hospital discharge (regular discharge or release to non-bed care) or outpatient release that entitlement is warranted, effective from the date of hospital admission or outpatient treatment and continuing for a period of 1, 2, or 3 months from the first day of the month following such hospital discharge or outpatient release. In order to attain the temporary total evaluation, the Veteran must demonstrate that his service connected disability resulted in: (1) surgery necessitating at least one month of convalescence; (2) surgery with severe postoperative residuals, such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, the application of a body cast, a necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or, (3) immobilization by cast, without surgery, of one major joint or more. 38 C.F.R. § 4.30 (a). 

The medical evidence indicates that the Veteran underwent the diverticulostomy September 8, 2015. According to the operation report, the operation went according to plan without complication. The Veteran was discharged the following day September 9, 2015. At that time, the Veteran was restricted to a liquid diet for the first 48 hours following surgery. The Veteran was prescribed medication for pain and fever. The Veteran was instructed to refrain from driving a car or bike, housework, lifting, participation in gym class, participation in sports, return to work/school/class, or resume sexual activity until the Veteran's follow-up visit the following week. The Veteran was able to walk, shower, contact with others, weight bearing, and stair climbing (supervised) immediately after surgery. The Veteran was instructed to call a physician in the event of bleeding, pain, fever, and issues swallowing. 

However, the evidence of record does not contain any other information demonstrating that the Veteran's surgery necessitated at least one month of convalescence. Therefore, entitlement to a temporary total evaluation for convalescence is not warranted. 



ORDER

Entitlement to an increased rating for service-connected PTSD in excess of 50 percent disabling is denied.

A disability rating of 30 percent, but no higher for a service-connected esophageal condition is granted. 

A temporary total evaluation for convalescence following the Veteran's September 2015 diverticulectomy is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs