﻿Citation Nr: AXXXXXXXX
Decision Date: 05/21/19 Archive Date: 05/21/19

DOCKET NO. 190114-1923
DATE: May 21, 2019

ORDER

An effective date earlier than October 7, 2016, for the grant of a 50 percent rating for posttraumatic stress disorder (PTSD) is denied. 

An effective date earlier than November 29, 2017, for the grant of a 20 percent rating for a right shoulder disability is denied.

Specially adapted housing (SAH) is denied.

A special home adaptation grant (SHA) is denied.

FINDINGS OF FACT

1. The Veteran served on active duty from May 1981 to March 1991, he has been rated at 100 percent disabled based on unemployability since July 2016 and at a 100 percent schedular rating since November 2017.

2. In June 2017, the Regional Office (RO) granted service connection for PTSD and assigned a 30 percent rating effective August 6, 2009. Subsequently, the RO increased the rating to 50 percent effective November 29, 2017, the date the Veteran filed a claim for a total disability rating based on individual unemployability (TDIU).

3. For the period from August 6, 2009, to October 7, 2016, PTSD was manifested by depressed mood, anxiety, and sleep impairment, as well as forgetfulness, and intrusive thoughts; there is no evidence of occupational and social impairment with reduced reliability and productivity.

4. In May 2012, the RO granted service connection for a right shoulder disability and assigned a 10 percent rating effective February 25, 2012. In March 2018, the RO increased the rating to 20 percent effective November 29, 2017, the date the Veteran filed a claim for a TDIU.

5. For the period from February 25, 2012, to November 29, 2017, the right shoulder disability was manifested by pain, but not nonunion or dislocation of the clavicle or scapula, a humerus impairment, ankylosis, or limitation of motion functionally limited to shoulder level or less. 

6. It is not factually ascertainable that there was an increase in the Veteran’s right shoulder disability in the one-year period prior to the November 29, 2017, claim for TDIU. 

7. The Veteran does not have a permanent and total service-connected disability due to loss or loss of use of both lower or upper extremities, blindness plus anatomical or loss of use of one lower extremity, loss or loss of use of one lower extremity together with residuals of organic disease or injury or loss of use of one upper extremity affecting balance or propulsion, full thickness or subdermal burns resulting in contracture, or amyotrophic lateral sclerosis.

8. The Veteran does not have a permanent and total service-connected disability which includes the anatomical loss or loss of use both hands or is due to deep partial thickness burns or full thickness or subdermal burns resulting in contracture or is due to residuals of an inhalation injury; and he is not service-connected for blindness in both eyes.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than October 7, 2016, for the grant of a 50 percent rating for PTSD have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.151, 3.155, 3.400 (2018).

2. The criteria for an effective date earlier than November 29, 2017, for the grant of a 20 percent rating for a right shoulder disability have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.151, 3.155, 3.400 (2018).

3. The criteria for establishing eligibility for financial assistance for SAH have not been met. 38 U.S.C. § 2101(a) (2012); 38 C.F.R. §§ 3.350, 3.809 (2018).

4. The criteria for establishing eligibility for financial assistance for SHA have not been met. 38 U.S.C. § 2101(b) (2012); 38 C.F.R. §§ 3.350, 3.809a (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As a procedural matter, the rating decision on appeal was issued in December 2018. In October 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). He selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form in October 2018. Accordingly, the December 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. He timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Effective Date Claims

The pertinent provisions of 38 C.F.R. § 3.400 clarify that, except as otherwise provided, the effective date of an evaluation and award of compensation based on a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. Specifically, as to claims for increase, 38 C.F.R. § 3.400 provides that the effective date of an evaluation and award of compensation based on a claim for increase will be the date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within 1 year from such date, otherwise, date of receipt of claim. 38 C.F.R. § 3.400(o).

The law and regulations provide that the effective date for an increase will be as follows: If the increase occurred within one year prior to the claim, the increase is effective as of the date the increase was “factually ascertainable.” If the increase occurred more than one year prior to the claim, the award is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C. § 5110 (b)(2); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400 (o)(1),(2).

VA amended its adjudication regulations on March 24, 2015, to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015.

Under the former legal authority, any communication or action, indicating an intent to apply for one or more benefits under laws administered by VA, from a veteran or his representative, may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the veteran, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(a) (in effect prior to March 24, 2015).

There is no set form that an informal written claim must take. All that is required is that the communication indicates an intent to apply for one or more benefits under the laws administered by VA, and identify the benefits sought. Rodriguez v. West, 189 F.3d 1351 (1999).

Under the revised regulations, although informal claims are no longer recognized, a claimant may submit an intent to file a claim, and VA may recognize the receipt date of the intent to file a claim as the date of claim so long as VA receives the successfully completed claim form within one year of receipt of the intent to file a claim. An intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based. 38 C.F.R. § 3.155(b).

PTSD

Historically, the Veteran filed a claim for PTSD in August 2009. In December 2009, the RO denied the claim. He filed a timely notice of disagreement (NOD) and perfected his appeal to the Board. The Board remanded the claim twice (in September 2012 and October 2015). Thereafter, service connection for PTSD was granted in June 2017. A 30 percent rating was assigned effective the date of the claim for service connection, August 6, 2009. 

On November 29, 2017, the Veteran filed a claim of entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities, in part due to his service-connected PTSD and right shoulder disability, which the RO accepted as a claim for an increased rating for the service-connected PTSD and right shoulder disability.

In March 2018, the RO granted an increased rating of 50 percent for PTSD, effective November 29, 2017. In May 2018, the Veteran filed a timely NOD with respect to the effective date assigned for the award of the 50 percent rating. 

In July 2018, the RO granted an earlier effective date of October 7, 2016, for the grant of the 50 percent rating for PTSD. A statement of the case (SOC) denying an effective date earlier than October 7, 2016, for the grant of the 50 percent rating for PTSD, was issued in July 2018, and the Veteran filed a timely VA Form 9 in August 2018. Thereafter, he submitted his RAMP form in October 2018, electing Higher Level Review. A December 2018 RAMP rating decision denied an earlier effective date and in a March 2019 letter he was informed that the appeal had been placed on Direct Review Docket. The December 2018 RAMP rating decision had no favorable findings.

As the Veteran submitted an NOD with respect to the effective date of the 50 percent rating in May 2018, which is within one year of the June 2017 rating decision granting service connection for PTSD, the Board will consider whether the increased 50 percent rating is warranted as early as the original grant of service connection, that is August 6, 2009.

PTSD is evaluated under 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411, pursuant to the General Rating Formula for Mental Disorders (“General Rating Formula”). Under the General Rating Formula, a 30 percent is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupation tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: a depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

The medical evidence as of August 6, 2009, but prior to October 7, 2016, includes VA treatment records from October 2009 which reflected a diagnosis of PTSD for which he was prescribed medication. He was noted to be working as a shipping-receiving clerk. He was alert, calm, cooperative, had a pleasant affect, and did not have suicidal or homicidal ideation, or psychosis. 

A February 2010 VA treatment record reflected that the Veteran was employed. It was noted that he tended to be irritable with his wife. He reported going to church regularly. Mental status examination revealed that he was alert, calm, and cooperative. His speech was mildly pressured and his affect was irritable when discussing the denial of his claim for service connection for PTSD. There was no suicidal ideation, homicidal ideation, or psychosis. He was appropriate in his interactions. It was noted that he experienced situational stressors but he was relatively stable from an affective standpoint.

A May 2010 VA treatment record indicated that the Veteran continued to see a social worker and gained support from reading the Bible. He quit his job a month previously because he was about to be laid off and he found another job in security. A July 2011 VA treatment record reflected that he was well-dressed and groomed, socially appropriate, cooperative, and frank. His speech was coherent, fluent, normal in volume and content, but mildly pressured. His mood was mildly irritable. His affect was appropriate to content. He denied hallucinations and the examiner determined that his insight and judgment were fair, and his abstract reasoning was intact. He was fully oriented.

A September 2012 VA treatment record showed that the Veteran was attending and enjoying some social outings, such as family reunions, jazz concert, and gospel singing concert. He reported increased depression and intrusive thoughts. Mental status examination showed that he was well-groomed, socially appropriate. His speech was coherent, fluent and normal in rate and volume. His mood was irritable, and his affect was appropriate to content. He denied hallucinations and his insight and judgment were deemed fair. Abstract reasoning was intact. He was fully oriented, and his attention/concentration was fair.

A February 2013 VA treatment record noted that Veteran reported brief, mild depression over the holidays, which he attributed to missing and fallen comrades. He stated that he has reduced watching combat movies and engaged in less back and forth with his wife, resulting in fewer arguments. On mental status examination, he was well-groomed, socially appropriate. His speech was coherent, fluent and normal in rate and volume. His mood was unremarkable, and his affect was appropriate to content. He denied hallucinations and his insight and judgment were deemed fair. Abstract reasoning was intact. He was fully oriented and his attention/concentration was fair.

A September 2013 VA mental status examination reflected that the Veteran was well-groomed, socially appropriate. His speech was coherent, fluent and normal in rate and volume. His mood was dysphoric/irritable. His affect was congruent to mood. He denied hallucinations and his insight and judgment were deemed fair. Abstract reasoning was intact. He was fully oriented and his attention-concentration was fair. An October 2013 VA treatment record demonstrated that he was neatly dressed/groomed, alert and oriented. He had appropriate affect and there was no indication of suicidal/homicidal ideation.

A January 2014 VA treatment record noted that his holidays were just “okay.” His house was broken into in November and he reported hypervigilance since this incident. On examination he was neatly dressed/groomed, alert and oriented. He had appropriate affect and there was no indication of suicidal/homicidal ideation.

A July 2015 VA treatment record indicated that the Veteran was last seen for medication management in October 2013. His mood, energy and appetite were reportedly good. He indicated that he slept four to five hours a night. He denied crying and indicated that his self-esteem was good. His concentration and memory were intact. He participated with others in his group and connected with a veteran in his class. Socially he attended church weekly with his family. He walked daily for exercise.

Mental status examination revealed adequate hygiene and grooming. Eye contact was good and he was alert. His speech was normal and he described his mood as “ok.” His affect and mood were congruent, and his thought process was coherent and relevant. His thought content was devoid of hallucinations/delusions. He denied suicidal/homicidal ideation. Impulse control was noted to be good. Cognition was grossly intact and insight/judgment were good/adequate. 

An October 7, 2016 VA examination report demonstrated that the Veteran has been married to his current wife for 17 years (his third marriage). He has one daughter from his first marriage and two grandchildren. He was noted to be very church/faith oriented. The examiner noted that the following symptoms applied to PTSD: depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss (such as forgetting names, directions, or recent events), disturbances of motivation and mood, and difficulty establishing and maintaining effective work and social relationships. 

Based on the foregoing, the Board concludes that an increased rating of 50 percent is not warranted at any time prior to October 7, 2016. In this regard, the 30 percent rating assigned for this time period contemplates the Veteran’s depressed mood, anxiety, and sleep impairment, as well as forgetfulness, and intrusive thoughts. 

As he has exhibited no symptoms like or similar to circumstantial, circumlocutory, or stereotyped speech, weekly panic attacks, difficulty in understanding complex commands, memory impairment, impaired judgment, or impaired abstract thinking that result in reduced reliability or productivity, the criteria for a 50 percent rating were not met for the time period from August 7, 2009 but prior to October 7, 2016. Therefore, the medical evidence does not support the claim.

Right Shoulder Disability.

Historically, the RO granted service connection for a right shoulder disability in May 2012 and assigned a 10 percent rating effective February 25, 2012. In June 2012, the Veteran filed an NOD with respect to the rating assigned. In June 2014, an SOC was issued. In October 2014 and July 2015, supplemental SOCs were issued. In May 2018, the Board denied a rating in excess of 10 percent for a right shoulder disability.

Meanwhile, the record also contains a March 2018 rating decision which granted an increased rating of 20 percent for right shoulder disability, effective November 29, 2017. The Veteran filed an NOD with respect to the effective date assigned for the 20 percent rating in May 2018. An SOC was issued in July 2018 and he filed a timely VA Form 9 in August 2018. Thereafter, he submitted his RAMP form in October 2018, electing Higher Level Review. A December 2018 rating decision denied an earlier effective date and in a March 2019 letter the Veteran was informed that the appeal had been placed on Direct Review Docket. The December 2018 RAMP rating decision had no favorable findings.

The RO determined that the effective date of November 29, 2017, was appropriate because it was the date the Veteran submitted his completed TDIU claim. As previously noted, the AOJ interpreted the TDIU claim as encompassing a claim for an increased rating for the service-connected right shoulder. 

However, the Veteran timely appealed the original 10 percent rating assigned in the May 2012 which granted service connection for a right shoulder disability effective February 25, 2012. Although the claim for a rating in excess of 10 percent was denied by the Board in a May 2018 rating decision, the Board will address the facts most favorable to the Veteran. 

As such, the Board will consider whether the increased 20 percent rating is warranted as early as the original grant of service connection, that is February 25, 2012. 

The medical evidence as of February 25, 2012, includes VA treatment records and VA examination reports, which show evidence of right shoulder pain, but do not indicate that the right shoulder pain/symptomatology and functional impairment were sufficient to warrant a higher 20 percent rating pursuant to any diagnostic code pertinent to shoulder disabilities (DCs 5200-5203) prior to November 29, 2017. Specifically, the medical and lay evidence did not show that there was limitation of motion at the shoulder level or worse, dislocation or nonunion of the clavicle or scapula with loose movement, or ankylosis, at any time beginning February 25, 2012, but prior to November 29, 2017. 

In this regard, a February 25, 2012, VA examination report noted that flexion was to 150 degrees with pain beginning at 145 degrees. Abduction was to 180 degrees without pain. The Veteran was able to perform repetitive use testing and range of motion testing did not change on repetitive use. The examiner opined that there was functional loss/impairment of the right shoulder in terms of less movement that normal and pain on movement. Muscle strength testing was full and there was no ankylosis. 

An April 2014 VA examination report indicated that flexion was to 160 degrees with pain and abduction to 160 with pain. Repetitive use testing resulted in no additional limitation of motion but resulted in pain on movement. He retained normal 5/5 strength.

A February 2015 VA examination reflected flexion of the right shoulder to 150 degrees with pain at 145 degrees (above shoulder level) and full abduction to 180 without pain. Repetitive use testing resulted in no additional limitation of motion but resulted in less movement than normal and pain on movement. He retained normal 5/5 strength. The Veteran reported that he favored his right arm resulting in right shoulder pain. 

An April 2016 VA examination demonstrated flexion to 160 degrees without pain and abduction to 160 without pain. Repetitive use testing resulted in no additional limitation of motion. The examiner indicated that pain, weakness, fatigability, or incoordination did not significantly limit functional ability with repetitive use over a period of time. He retained normal 5/5 strength. 

Under DC 5203, a 10 percent rating is assigned for malunion of the clavicle or scapula. A 20 percent rating is assigned for nonunion of the clavicle or scapula with loose movement or dislocation of the clavicle or scapula. DC 5201 evaluates limitation of motion. A 20 percent rating is assigned for limitation of motion at shoulder level, a 30 percent rating is assigned for limitation of motion midway between the side and shoulder level, and a 40 percent rating is assigned for limitation of motion to 25 degrees from side.

DC 5200 evaluates ankylosis of the shoulder. The record contains no evidence of shoulder ankylosis, and the Veteran has not described symptoms that are suggestive of ankylosis. Therefore, this DC is not applicable. DC 5202 evaluates impairment of the humerus. The record contains no evidence of an impairment of the humerus, and the Veteran has not described symptoms that are suggestive of an impairment of the humerus. Therefore, this DC is not applicable. 

Normal ranges of motion of the shoulder are flexion (forward elevation) from 0 degrees to 180 degrees, abduction from 0 to 180 degrees, external rotation from 0 to 90 degrees, and internal rotation from 0 to 90 degrees. 38 C.F.R. § 4.71, Plate I.

When considering the evidence of record, the Veteran consistently demonstrated right shoulder range of motion in excess of shoulder level (in excess of 90 degrees). In addition, VA examiners did not indicate that he had an impairment of the clavicle or scapula or an impairment of the humerus. Importantly, the VA treatment records do not reflect any complaints or findings that conflict with the VA examination reports. 

Therefore, the medical evidence does not reflect that a higher 20 percent rating was warranted for the service-connected right shoulder disability under any DC at any time between the effective date of service connection (February 25, 2012) and November 29, 2017.

SAH and SHA

A certificate of eligibility for assistance in acquiring SAH may be awarded to a veteran who is receiving compensation for permanent and total service-connected disability due to (1) the loss, or loss of use, of both lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair, or (2) blindness in both eyes, having only light perception, plus, the anatomical loss or loss of use of one lower extremity, or (3) the loss or loss of use of one lower extremity together with residuals of organic disease or injury which so affect the functions of balance or propulsion as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair, or (4) the loss or loss of use of one lower extremity together with the loss or loss of use of one upper extremity which so affect the functions of balance or propulsion as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair, or (5) the loss or loss of use of both upper extremities such as to preclude use of the arms at or above the elbow, or (6) full thickness or subdermal burns that have resulted in contractures with limitation of motion of two or more extremities or of at least one extremity and the trunk. 38 C.F.R. § 3.809 (a), (b)(1)-(6). VA also considers § 3.809(b) satisfied if the veteran has service-connected amyotrophic lateral sclerosis rated 100 percent disabling under Diagnostic Code 8017. 38 C.F.R. § 3.809(d). 

The Veteran is service-connected for left knee status/post total knee arthoplasty rated at 60 percent, PTSD rated at 50 percent, impingement syndrome of the left shoulder rated at 30 percent, right shoulder disability rated at 20 percent, limitation of flexion of the left knee rated at 10 percent, right knee synovitis rated at 10 percent, and tinnitus rated at 10 percent. He does not have a permanent and total service-connected disability and he does not meet any of the requirements set forth above.

If entitlement to SAH is not established, a veteran can qualify for a grant for necessary SHAs if he has a service-connected disability that results in blindness in both eyes with 20/200 visual acuity or less in the better eye with the use of a standard correcting lens or a limitation in fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees; such a disability need not be permanent and total in nature. 

Additionally, a SHA grant is available for a veteran that has a permanent and total disability which: (1) includes the anatomical loss or loss of use of both hands; (2) is due to deep partial thickness burns that have resulted in contracture(s) with limitation of motion of two or more extremities or of at least one extremity and the trunk; (3) is due to full thickness or subdermal burns that have resulted in contracture(s) of one or more extremities or the trunk; or, (4) is due to residuals of an inhalation injury (including, but not limited to, pulmonary fibrosis, asthma, and chronic obstructive pulmonary disease). 38 C.F.R. § 3.809a(b).

The Veteran’s service-connected disabilities do not result in blindness. He also does not have a permanent and total service-connected disability and he does not meet any of the applicable requirements for SHAs set forth above. In considering the claims, the Board notes that review of the claims folder shows the Veteran has service-connected knee disabilities; however, he does not have anatomical loss or loss of use of the foot or lower extremities. 38 C.F.R. § 3.350. 

In summary, the Veteran does not meet the requirements for SAH or an SHA grant and there is no legal basis for awarding the benefits sought. The preponderance of the evidence is against the claims and the doctrine of reasonable doubt is not for application. 38 C.F.R. § 3.102. The appeals are denied.

Finally, the Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, for the Board’s consideration. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

 

L. HOWELL

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Redman, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.