﻿Citation Nr: AXXXXXXXX
Decision Date: 03/25/20 Archive Date: 04/02/20

DOCKET NO. 190517-5904
DATE: March 25, 2020

ORDER

Entitlement to a compensable initial rating for service-connected bilateral sensorineural hearing loss (SNHL) is denied.

REMANDED

Entitlement to service connection for a cardiac disorder, claimed as heart disease, is remanded.

Entitlement to service connection for left bundle branch block is remanded.

Entitlement to service connection for essential tremor is remanded.

Entitlement to service connection for hypertension is remanded.

Entitlement to service connection for varicose veins of the left lower extremity is remanded.

Entitlement to service connection for chronic sinusitis is remanded.

Entitlement to service connection for gastroesophageal disorder is remanded.

Entitlement to service connection for skin cancer is remanded.

FINDING OF FACT

The Veteran’s hearing loss has manifested as hearing acuity of no worse than Level I in the right ear and Level IV in the left ear.

CONCLUSION OF LAW

The criteria for a compensable initial rating for bilateral SNHL have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.383, 3.385, 4.1, 4.3, 4.7, 4.85, 4.86, Diagnostic Code 6100.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active service from July 1966 to December 1969. In addition, the Veteran retired from the United States Army Reserve in December 1988 after more than 20 years as a reservist.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (to be codified as amended in scattered sections of 38 U.S.C.), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans to seek review of decisions with which they disagree made by the Department of Veterans Affairs (VA).

This matter is on appeal from a February 22, 2019 rating decision, for which the Veteran received notice on February 27, 2019. On May 17, 2019, VA received the Veteran’s timely appeal of the decision of the Agency of Original Jurisdiction (AOJ). In his Decision Review Request: Board Appeal (Notice of Disagreement), the Veteran opted for the Board’s Evidence Docket. Accordingly, the Board’s decision is based on the evidence of record at the time of the February 2019 rating decision as well as evidence added to the record within 90 days of the Veteran’s May 17, 2019 notice of disagreement. See 38 C.F.R. § 20.301.

The Board notes that the Veteran’s May 2019 statement accompanying his notice of disagreement discusses his entitlement to service connection for tinnitus. The February 2019 rating decision deferred adjudication of the service connection claim for tinnitus, and the Veteran’s claim has not been adjudicated in the first instance by the AOJ. Accordingly, it is not presently before the Board and will not be discussed further.

Entitlement to a Compensable Initial Rating for Service-Connected SNHL

The Veteran is currently in receipt of a noncompensable rating for his service-connected bilateral SNHL. He seeks a compensable rating for the entire period of the appeal. 

Evaluations of defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of a controlled Maryland CNC speech discrimination test together with the average hearing threshold level measured by pure tone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz). 38 C.F.R. § 4.85, Diagnostic Code 6100.

To evaluate the degree of disability from bilateral service-connected hearing loss, the schedule establishes 11 auditory hearing acuity levels designated from Level I for essentially normal hearing acuity through Level XI for profound deafness. 38 C.F.R. § 4.85, Tables VI and VII.

An exceptional pattern of hearing impairment occurs when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more. 38 C.F.R. § 4.86(a). In that situation, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Further, when the average pure tone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral, and that numeral will then be elevated to the next higher numeral. 38 C.F.R. § 4.86(b).

To determine the percentage evaluation from Table VII, the non-service-connected ear will be assigned a Roman Numeral designation for hearing impairment of I, subject to the provisions of 38 C.F.R. § 3.383. 38 C.F.R. § 4.85(f).

A December 2018 VA examination shows the Veteran’s Maryland CNC Word List speech recognition score and pure tone thresholds, in decibels, were as follows: 

12/7/2018 HERTZ

 1000 2000 3000 4000 Avg CNC

RIGHT 35 55 60 65 54 92

LEFT 40 60 65 70 59 80

Applying the results to Table VI, the findings yield a numeric designation of Level I in the right ear and Level IV in the left ear. Entering the resulting bilateral numeric designation of Level I for the right ear and Level IV for the left ear to 38 C.F.R. § 4.85, Table VII, equates to a 0 percent disability rating under Diagnostic Code 6100. An exceptional pattern of hearing impairment under 38 C.F.R. § 4.86 was not shown.

The Board notes that disability ratings for hearing loss are derived from a mechanical application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). Application of that rating criteria show a compensable evaluation is not warranted notwithstanding the Veteran’s statements and contentions regarding his hearing loss. Any functional impact of the Veteran’s hearing loss is contemplated by the rating criteria, Doucette v. Shulkin, 28 Vet. App. 366 (2017), to include the Veteran’s non-compensable rating. See Rossy v. Shulkin, 29 Vet. App. 142, 145 (2017).

Accordingly, the preponderance of the most probative evidence is against the claim of entitlement to a compensable rating for bilateral hearing loss. In reaching the conclusion above, the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran’s claim, and the doctrine does not apply here. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

REASONS FOR REMAND

1. Duty to Assist Errors Related to Veteran’s Service Records

One of the effects of the AMA is to narrow the set of circumstances in which the Board must remand appeals to the AOJ for further development instead of immediately deciding them directly. Under the AMA, the Board has the duty to remand issues when necessary to correct pre-decisional duty-to-assist errors where the issues on appeal cannot be granted in full. 38 U.S.C. § 5103A(f); 38 C.F.R. § 20.802(a). 

Here, the AOJ did not discharge its duty to assist the Veteran by obtaining all of his service treatment and military personnel records. 38 U.S.C. § 5103A specifically provides that VA’s duty to assist the Veteran includes obtaining a “claimant’s service medical records and, if the claimant has furnished the Secretary information sufficient to locate such records, other relevant records pertaining to the claimant’s active military, naval, or air service that are held or maintained by a governmental entity.” The record shows that the Veteran had active service from July 1966 to December 1969. The record further shows that the Veteran enlisted in the Army Reserves in April 1964, was commissioned as an officer in the Army Reserves in June 1966, and served for more than 20 years before retiring as a Lieutenant Colonel in December 1988. 

While the record includes documents related to the Veteran’s promotions and his accrual of points for retirement purposes, it does not appear that the Veteran’s claims file includes all of his military personnel records. In March 1985 correspondence associated with the Veteran’s military personnel records, the Veteran sought to bring his annual statement of points up to date to demonstrate 20 years of service for purposes of retirement benefits. Included in the packet are orders for the Veteran to attend annual training in July 1979, July and August 1980, and July and August 1981, and to attend active duty for support from January 22, 1982 to January 24, 1982. The Board notes two observations regarding these orders. First, they are only included in the Veteran’s personnel record because he submitted them to document and verify his qualification for certain retirement benefits. Had he not provided them in March 1985, they would not be among the military personnel records included in his claims file. Second, given the Veteran’s 20 years of service in the Army Reserves, they most likely do not represent all of the orders that the Veteran received for periods of active duty for training (ACDUTRA) or inactive duty for training (INACDUTRA). Indeed, a hand-written note accompanying the Veteran’s March 1985 submission notes points accrued during periods of time outside of the orders included in his submission. 

Because the record indicates that the Veteran’s military personnel records are incomplete, his claims must be remanded to correct duty to assist errors. See 38 U.S.C. § 5103A.

2. Entitlement to Service Connection for a Heart Condition, Left Bundle Branch Block, Hypertension, and Essential Tremor Are Remanded

The duty to assist the Veteran also includes providing a VA examination under certain circumstances. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Those circumstances are present here, and the AOJ committed a pre-decisional duty to assist error by failing to afford the Veteran VA examinations for his heart disease, left bundle branch block, hypertension, and essential tremor. 

In a May 2019 statement accompanying his notice of disagreement, the Veteran indicated that he underwent cardiac testing during active service. Those results, however, were dismissed due to faults in the electrocardiogram machine. Those test results are not included in the service treatment records available in the Veteran’s claim file. The Board notes, though, the existence of a February 1984 periodic examination that includes an electrocardiogram with a handwritten note interpreting them as “within normal limits.”

In a September 2018 statement accompanying his claims and a May 2019 statement accompanying his notice of disagreement, the Veteran noted that he first had cardiac issues at the age of 48. He underwent extensive testing at that time, and it was determined that he had heart disease and a left bundle branch block in his heart. In his statement he asserted that his hypertension and essential tremor are related to his cardiac disorders. The Veteran further reported that his treating physicians at that time attributed his heart disease, left bundle branch block, hypertension, and essential tremor to stress from his duties with a telecommunications company and his duties as an Army reservist.

Given the Veteran’s reports regarding his physicians’ opinion as to the association between his service in the Army Reserves and his cardiac disorders, the AOJ should have provided the Veteran with a VA examination to determine the nature and etiology of his cardiac disorder, left bundle branch block, hypertension, and essential tremor. The record evidence document diagnoses for these conditions, and the Veteran’s statements note that they may have arisen in the line of the Veteran’s reserve duties during periods of ACDUTRA or INACDURTA. However, the available evidence does not permit the adjudication of these issues; therefore, they must be remanded to afford the Veteran a VA examination.

3. Entitlement to Service Connection for a Vascular Disorder of both Lower Extremities Is Remanded

The issue of entitlement to service connection for a vascular disorder of both lower extremities must also be remanded to correct a duty to assist error that occurred prior to the February 2019 rating decision on appeal. The Veteran’s medical records document treatment for a valvular disorder in the veins of both lower extremities, and the Veteran reported in a September 2018 statement that his doctors attributed it to 20 or more years of running in combat boots as part of his service in the Army Reserves. Thus, there was an indication in the record that the Veteran’s valvular disorder was etiologically related to periods of either ACDUTRA or INACDUTRA. Based on the Veteran’s treatment records and statement, a VA examination is required to determine whether the Veteran’s valvular disorder was incurred during a period of ACDUTRA or INACDUTRA. 

4. Entitlement to Service Connection for Chronic Sinusitis

The Veteran contends that his chronic sinusitis began during his service as an Army reservist. A May 1981 report of medical history indicates that sinusitis had its onset 18 months prior and that the Veteran was receiving allergy shots at the time of the Report. The record, however, does not indicate whether sinusitis was incurred in the line of duty during a period of ACDUTRA. Thus, a remand is necessary to afford the Veteran a VA examination to determine the nature and etiology of his chronic sinusitis.

The matters are REMANDED for the following action:

1. Obtain the Veteran’s complete service treatment and personnel records, to include all documents pertaining to his service in the Army Reserves. Verify all active duty for training and inactive duty training dates for the Veteran’s service in the Army Reserves. If necessary, a request should be made to the Defense Finance and Accounting Service (DFAS). Document all requests for information as well as all responses in the claims file.

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any heart condition. The examiner must provide the following opinions:

(a.) Whether a heart condition is at least as likely as not related to an in-service injury, event, or disease during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether it is more likely than not that the Veteran incurred a heart condition in the line of duty during a period of either ACDUTRA or INACDUTRA. 

(c.) Whether it is more likely than not (i) that the Veteran’s heart condition worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of heart condition during a period of ACDUTRA or INACDUTRA.

(d.) Whether a diagnosed heart condition is at least as likely as not (1) proximately due to hypertension, left bundle brach block, or essential tremor, or (2) aggravated beyond its natural progression by hypertension, left bundle branch block, or essential tremor. If the opinion is that a disability or combination of disabilities aggravated the diagnosed heart condition, the examiner should specify, so far as possible, the degree of disability resulting from such aggravation. All opinions must be supported by a rationale.

3. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any left bundle branch block. The examiner must provide the following opinions:

(a.) Whether left bundle branch block is at least as likely as not related to an in-service injury, event, or disease during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether it is more likely than not that the Veteran incurred left bundle branch block in the line of duty during a period of either ACDUTRA or INACDUTRA. 

(c.) Whether it is more likely than not (i) that the Veteran’s left bundle branch block worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of left bundle branch block during a period of ACDUTRA or INACDURTRA.

(d.) Whether left bundle branch block is at least as likely as not (1) proximately due to heart condition, hypertension, or essential tremor, or (2) aggravated beyond its natural progression by any heart condition, hypertension, or essential tremor. If the opinion is that a disability or combination of disabilities aggravated left bundle branch block, the examiner should specify, so far as possible, the degree of disability resulting from such aggravation. All opinions must be supported by a rationale.

4. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of hypertension. The examiner must provide the following opinions:

(a.) Whether hypertension is at least as likely as not related to an in-service injury, event, or disease during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether hypertension is more likely than not that the Veteran incurred hypertension in the line of duty during a period of either ACDUTRA or INACDUTRA. 

(c.) Whether it is more likely than not (i) that the Veteran’s hypertension worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of hypertension during a period of ACDUTRA or INACDUTRA.

(d.) Whether hypertension is at least as likely as not (1) proximately due to any heart condition, left bundle branch block, or essential tremor, or (2) aggravated beyond its natural progression by any heart condition, left bundle branch block, or essential tremor. If the opinion is that a disability or combination of disabilities aggravated the hypertension, the examiner should specify, so far as possible, the degree of disability resulting from such aggravation. All opinions must be supported by a rationale.

5. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any essential tremor. The examiner must provide the following opinions:

(a.) Whether essential tremor is at least as likely as not related to an in-service injury, event, or disease, including during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether it is more likely than not that the Veteran incurred essential tremor in the line of duty during a period of either ACDUTRA or INACDUTRA. 

(c.) Whether it is more likely than not (i) that the Veteran’s essential tremor worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of essential tremor during a period of ACDUTRA or INACDUTRA.

(d.) Whether essential tremor is at least as likely as not (1) proximately due to any heart condition, left bundle branch block, or hypertension, or (2) aggravated beyond its natural progression by any heart condition, left bundle branch block, or hypertension. If the opinion is that a disability or combination of disabilities aggravated the essential tremor, the examiner should specify, so far as possible, the degree of disability resulting from such aggravation. All opinions must be supported by a rationale.

6. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any vascular valvular disorder. The examiner must provide the following opinions:

(a.) Whether vascular valvular disorder is at least as likely as not related to an in-service injury, event, or disease, including during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether it is more likely than not that the Veteran incurred a vascular valvular disorder of both lower extremities in the line of duty during a period of either ACDUTRA or INACDUTRA. 

(c.) Whether it is more likely than not (i) that the Veteran’s vascular valvular disorder of both lower extremities worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of vascular valvular disorder of both lower extremities during a period of ACDUTRA or INACDUTRA.

(d.) Whether vascular valvular disorder of both lower extremities is at least as likely as not (1) proximately due to a cardiac disorder, left bundle branch block, hypertension, or essential tremor, or (2) aggravated beyond its natural progression by a cardiac disorder, left bundle branch block, hypertension, or essential tremor. If the opinion is that a disability or combination of disabilities aggravated the vascular valvular disorder, the examiner should specify, so far as possible, the degree of disability resulting from such aggravation. All opinions must be supported by a rationale.

7. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of chronic sinusitis. The examiner must provide the following opinions:

(a.) Whether chronic sinusitis is at least as likely as not related to an in-service injury, event, or disease, including during the Veteran’s period of active service from July 1966 to December 1969.

(b.) Whether it is more likely than not that the Veteran incurred chronic sinusitis in the line of duty during a period of either ACDUTRA or INACDUTRA, to include periods in either 1980 or 1981.

(c.) Whether it is more likely than not (i) that chronic sinusitis worsened during a period of ACDUTRA or INACDUTRA, and (ii) that the Veteran’s duties in the signal corps caused the worsening of chronic sinusitis during a period of ACDUTRA or INACDUTRA.

 

 

C. M. COLLINS

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Douglas M. Humphrey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.